POST et al. v. BEACON VACUUM PUMP & ELECTRICAL CO. et al.

(Circuit Court of Appeals, First Circuit.     January 19, 1898.)

No. 216.

1. EQUITY—RESCISSION—SUFFICIENCY OF ALLEGATIONS.
    A bill for a rescission, which will seriously affect the interest of others, must contain clear and positive allegations showing the equitable right of the complainants to the relief asked.

2. CORPORATIONS—TRANSFER OF PROPERTY—ULTRA VIRES.
    The action of a corporation in transferring its property and business to another corporation is not ultra vires except as to creditors prejudiced thereby, or nonassenting stockholders, and their right to a rescission may be waived.

3. SAME—RIGHTS OF STOCKHOLDERS—ESTOPPEL.
    A majority of the stockholders of a corporation, by vote, agreed to a reorganization, and the transfer of its property and business to a new corporation, in consideration of the issuance to the stockholders of a certain amount of the stock of the new company, and the privilege to such stockholders of subscribing for the remainder at a fixed price. The plan was executed, and the transfer made. Held, that minority stockholders who opposed the transfer, but who subscribed for their proportion of the

stock of the new company, though under protest, and permitted such company to conduct the business for 18 months, were estopped to then ask for a rescission.

Appeal from the Circuit Court of the United States for the District of Maine.

This is a bill by Louis Post and others, as stockholders of the Beacon Vacuum Pump & Electrical Company, against such company and the Beacon Lamp Company, to rescind a transfer of the property of the former corporation to the latter.

Edward P. Payson, for appellants.

William H. Dunbar, George E. Bird, and Louis D. Brandeis, for appellees.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

PUTNAM, Circuit Judge. The complainants are stockholders of the Beacon Vacuum Pump & Electrical Company, which, for convenience, we will call the "Pump Company." They bring this bill against that corporation and the Beacon Lamp Company, which we will call the "Lamp Company." The capital stock of the Pump Company is $1,000,000, divided into 40,000 shares, of the par value of $25 each, all of which are outstanding. Complainants hold 2,-580 shares, being a fraction over one-sixteenth part of the entire issue. They assume to bring their bill in behalf of themselves and of all others in like interest; but, as the case stands, there are no others in like interest. It is maintained that the cause of action which the bill presents exists, if at all, only in the right of the corporation, and not in the right of the stockholders themselves; but we will not find it necessary to determine this proposition.

The bill was demurred to by both respondent corporations, assigning various grounds of demurrer, and, among the rest, a want of equity, which is the only one to which we will have occasion to refer. It shows that the Pump Company is a manufacturing corporation, and had been making electric lamps. It seeks to set aside a transfer from it to the Lamp Company, made pursuant to a scheme of reorganization, and executed in July, 1895. The bill alleges that "on or about March, 1895, the assets of" the Pump Company, "exclusive of letters patent, were shown by the corporation books to be about $130,000"; and that the entire liabilities of that corporation, not including the capital stock, were about $60,000, "leaving the said company with about $70,000 worth of personal property, and said letters patent"; and, further, that, "of said $60,000 indebtedness, over $38,000 had been incurred upon loans for which the corporation issued bonds due and payable about 1902, thus leaving its then current indebtedness, in bills payable and accounts, some $22,000." It also alleges that the Pump Company had in 1895 "sufficient assets to enable it to make further loans, if any such were required, and also the legal right to amend its charter to increase its capital, so as to enable it to issue

more stock"; and that it "was neither insolvent nor without power to obtain the necessary funds to continue in business." It also alleges that, in the event the Pump Company had been wound up and its assets sold to pay its debts, the value of its letters patent would have added "a large sum to the $70,000 of property held above its indebtedness," and that the value of the letters patent appears, from the circular to the stockholders setting out the scheme of reorganization, to have been estimated at over $400,000 for use in exchange for $400,000 of the capital stock of the Lamp Company. There are no allegations showing that the old corporation had any existing available working capital.

It may well be questioned whether there is sufficient in these allegations to show that the Pump Company was financially capable of pursuing its business, or that its assets, if it had been wound up, would have yielded any substantial dividend to its stockholders. For example, the first, which refers to the books of the corporation for values, without any direct allegation about them, is, of course, insufficient on any rule of pleading governing the construction of a bill in equity to receive the consideration of the court. Again, the allegation to the effect that the value of the letters patent, if sold, would have added "a large sum" to the $70,-000 of property held above its indebtedness by the corporation, is equally ineffectual, because it is based on the defective statement of values which refers to the books of the corporation. So, also, the allegations that the Pump Company had sufficient assets to enable it "to make further loans," meaning thereby to borrow money, and that it might obtain power to issue more stock, without some definite statement as to its available resources, result in what is purely problematical. The allegation that the corporation was not insolvent, nor without power to obtain the necessary funds to continue in business, might properly, as the bill is framed, be regarded as a mere deduction from the other matters stated in the bill to which we have referred, and not at all as a positive, distinct allegation; and, in view of the insufficient character of the allegations with reference to the assets of the corporation to which we have called attention, it might well be held too general.

A bill seeking a result which may be so disastrous to the interests of other stockholders as this might be if its principal prayer were granted should support itself by decisive allegations. The general rule is that the essential parts of a bill in equity should be stated positively and with precision. Story, Eq. Pl. (10th Ed.) §§ 255, 256. This is especially insisted on where a remedy is sought by an injunction or a rescission, the result of which may not only compensate the party injured, which is all the common law ordinarily gives, but may impair the interests of the adverse party to a vastly disproportionate extent. The underlying principle is stated in the following cases, although applied there from an aspect different from that at bar: Grymes v. Sanders, 93 U. S. 55, 62; U. S. v. American Bell Tel. Co., 167 U. S. 224, 241, 17 Sup. Ct. 809. The common law gives relief on a mere preponderance of proofs; but it is certain that, in cases of the class we are considering, equi-

ty does not act unless the proofs are clear. The underlying reasons which require this require also that the allegations which the proofs are to sustain be clear to the effect that the complainant has suffered, or is threatened with, an injury so substantial as to demand, not only compensation, but also specific relief by rescission, even while this may cause a loss to others as to which his own would be comparatively trifling.

All the shareholders, except the complainants, agreed to a scheme which involved a reorganization of the Pump Company. It provided that a new corporation, the Lamp Company, should be organized; that its capital stock should be $500,000, divided in 50,-000 shares of the par of $10 each; that, of these shares, 10,000 should be issued to the stockholders of the Pump Company, without any consideration coming from them; that 32,000 shares should be open to subscription pro rata by such stockholders at $1.25 per share; and that the balance should be issued by the new corporation, as might afterwards be determined by it. It appears that the 32,000 shares had been underwritten; that is to, say, that an arrangement had been made by which certain individuals had agreed to take such portion thereof, paying the $1.25 per share therefor, as might not be taken by the holders of the stock of the Pump Company. This arrangement assured a working capital, and was ratified by the stockholders of the Pump Company at a meeting held June 20, 1895, no shareholder voting adversely. The complainants in the present bill had made known their opposition to the plan, but they did not appear at the stockholders' meeting, alleging that they assumed that the meeting would not be held, by reason of certain suits which they had instituted.

It is well to understand the precise nature of the proceedings against which the complainants protest. What was attempted and done by the Pump Company was not ultra vires in every sense of the term. No question of public policy was involved, and it was all permissible with the consent of all the stockholders; and, if it had been once accomplished with their approval, it could not have been rescinded by either the state or any parties in interest, unless by creditors prejudiced thereby, if there were any so prejudiced. Therefore, if the question involved is one of ultra vires, it is so in a modified way only; that is to say, it concerns only the contractual relations between the stockholders and the corporation, as to which the stockholders might waive their rights, either expressly or impliedly; or, under certain circumstances, any stockholder might become estopped from making a denial of a waiver.

The bill further alleges that the Lamp Company was organized "on or before the first day of July, 1895"; that pursuant to the plan of reorganization, "on or about July, 1895," the Pump Company transferred all its assets to the Lamp Company for the considerations named therein; and that the Lamp Company took possession thereof, and commenced to carry on, and is still carrying on, the former business of the Pump Company. It also alleges that the stock of the new corporation had been allotted; that the complainants are not informed whether it had been paid for or issued; and

that the 10,000 shares intended for distribution among the shareholders of the old corporation are held in the custody of its treasurer; and it professes ignorance whether or not the plan of reorganization had been completed in its other details. It prays for relief in various forms: First, for rescission; second, for a valuation of the complainants' interests in the old corporation, and payment thereof; and, third, as follows:

"Or that your orators may be adjudged severally entitled to receive an amount of the capital stock of said Beacon Lamp Company equal to the amount of their stock in said Beacon Vacuum Pump and Electrical Company, due consideration being had of the difference in the total capitalization of the said two companies, and said Beacon Lamp Company ordered to issue the same, upon surrender of their shares in said Beacon Vacuum Pump and Electrical Company to your orators."

We will call attention hereafter to the peculiar pertinency to the case of the last of these various forms of relief prayed for.

The bill also alleges as follows:

"What subscriptions have been made your orators are uninformed, except that your orators have, but only under protest and in order to preserve their rights, subscribed for an amount of stock in said Beacon Lamp Company pro rata to their holdings, but have not received any of the stock in said new company, nor have they ever surrendered their stock in said first-mentioned company; that, as they are informed and believe, the amount of stock in said Beacon Lamp Company to which your orators would have been at liberty to subscribe has been allotted to others, but whether either paid for or issued your orators are not informed."

Whatever rights the majority of the shareholders of a corporation which finds itself in the doubtful pecuniary condition into which the Pump Company had evidently fallen have with reference to the disposal of the assets of the corporation to a new one for a fair value, whether receiving therefor cash or the shares of the new corporation, when the transaction relates to an absolute sale, and amounts to a winding up of the corporate affairs, we must assume it to be the law that, independently of some appropriate statute provision, the majority has no power to involve the minority in a reorganization on the lines of this now in issue, or on any similar lines, without its consent, expressed or implied. The minority has a lawful right to maintain that the contractual relations which it established with a corporation whose shareholders they became does not include a contractual relation with any other corporation; and there is no right in law to compel it to elect between such new contractual relation and the loss of its shares in the old corporation, or compensation for them on any arbitrary basis which a reorganization may give. The underlying principle was stated in Clearwater v. Meredith, 1 Wall. 25, 39, and the rule seems to have been clearly recognized in Mason v. Mining Co., 133 U. S. 50, 10 Sup. Ct. 224; but a rule at law is often one thing, and the right to relief in equity a very different matter. Equity will not raise its hand to give specific relief, and rescind and annul important transactions as to which there is no charge of a dishonest purpose, and which, if not interfered with, may give great profit to parties interested in them, or at least prevent them from suffering great loss, at the demand of a party who does not

show clearly and definitely a valuable and substantial interest, which has been unlawfully disregarded, or is in danger thereof, and who does not, under the circumstances of the case at bar, show that he has consistently maintained a position in protection of his rights adverse to the majority interest, or that he has had no opportunity so to do. Indeed, the rule was well stated by Mr. Justice Field in Dimpfell v. Railway Co., 110 U. S. 209, 3 Sup. Ct. 573, to the effect that the equity courts will not interfere in matters of this character merely because there may be a doubt as to the authority sustaining the proceedings, or as to their wisdom, nor unless a real and substantial grievance exists. A convenient collection of authorities illustrating this proposition will be found in Bassett v. Manufacturing Co., 47 N. H. 426.

As we have already shown, it may well be argued that the bill, which we must presume sets out the best case the complainants can make, nowhere alleges in terms which the equity courts can accept that the complainants have any such grievance, or, in any clear or positive way, that the complainants have brought it for any purpose except that of maintaining their strictly legal rights. On the other hand, the last variation in the prayers for relief, to which we have referred, involves an admission that the complainants make no objection to being put into a contractual relation with the new corporation, but that their real grievance is that they cannot receive their proportion of the 32,000 shares of stock, to be subscribed for, on better terms than their co-shareholders, by being relieved from the payment of the stated $1.25 per share.

But, passing by all these questions, it is clear that the complainants have not maintained that consistent position necessary to relieve them against an equitable estoppel. They admit that they have subscribed for their proportion of the 32,000 shares of stock in the new corporation. They do not state the date when they made the subscription. The transfer of the assets to this corporation was made in July, 1895, and the bill was not filed until the 12th day of January, 1897; so that, although at the outset they protested against the reorganization, yet their subscription, in the absence of any proper allegation otherwise, must be presumed to have been made at such a time as justified the respondents in assuming that the Lamp Company was authorized, so far as the complainants were concerned, to receive the transfer of the property of the old corporation, and to commence and carry on its manufacturing business, thus involving itself in the liabilities and other complications inevitably arising therefrom. That this raised an estoppel in equity as against a bill praying rescission is too clear to need discussion. It is true that complainants allege that this subscription was under protest, and only to preserve their rights; but the bill does not give the court any details which would enable it to perceive that, by any possibility, the effect of the subscription, which of itself would be an accomplished fact, could be overcome by any protest or other formal reservation which might accompany it. The decree of the court below is affirmed, with the costs of this court for the appellees.