VENNER v. FITZGERALD et al.

(Circuit Court, S. D. New York. January 10, 1899.)

INSOLVENT CORPORATIONS — POWERS OF REORGANIZATION COMMITTEE — RIGHT OF STOCKHOLDERS.

A reorganization committee, appointed by holders of the stock and securities of an insolvent railroad corporation, in whose hands have been placed many millions of dollars' worth of different securities, held in many rights, for the purpose of effecting a reorganization of the corporation upon the same franchises, must necessarily be accorded a wide discretion; and where, by the agreement under which it acts, it is given "absolute and complete discretion and latitude in the use, disposition, and distribution" of the reserved securities of the new corporation, a court of equity will be authorized to interfere with such distribution only upon a consideration of the entire arrangement of compromises, concessions, and inducements made by the committee; and a bill by a stockholder, merely alleging that certain acts of the committee, in purchasing securities of the old company, and in distributing securities of the new, are foreign to the purposes of the committee, and unauthorized, is insufficient to show an equitable right to an injunction or to an accounting by members of the committee.

This is a suit in equity by George L. Venner against Louis Fitzgerald and others, members of a reorganization committee of the stock and security holders of the Union Pacific Railway Company. Heard on demurrer to the bill.

George H. Yeaman, for plaintiff.
Rush Taggart, for defendants.

WHEELER, District Judge. The bill alleges that the plaintiff, a citizen of Massachusetts, was the owner of 200 shares of the capital stock of the Union Pacific Railway Company, which was insolvent, of the par value of $20,000, and that were, with many millions of other stocks and securities, placed in the hands of the defendants Fitzgerald, Schiff, Depew, and Hughitt, who, with T. Jefferson Coolidge, Jr., and Oliver Ames, 2d, also citizens of Massachusetts, constituted a reorganization committee of the stock and security holders, for whom the defendant the Mercantile Trust Company is a depositary, pursuant to a plan by which the plaintiff would become entitled to the same amount of common stock of the Union Pacific Railroad Company, a new corporation with the same franchises; that the committee has, from assets of the old company, paid to the defendants J. P. Morgan & Co. at one time $2,250,000, and at another time $3,330,000, for bonds and securities, which purchase, "and various others of like character, was wholly foreign to the objects and purposes of the said plan and agreement of reorganization"; that $2,122,000 of par value of preferred stock of the new corporation has been delivered to the reorganization committee, $1,273,200 of which is to be distributed by J. P.

Morgan & Co., without consideration, to holders of trust notes of the old corporation, $424,000 of which is to be delivered as a bonus to a syndicate, and $424,400 of which is to be retained by that firm for its own compensation; that the committee "have, in divers ways and for different purposes, and which your orator cannot specifically state, expended and disbursed large sums of money coming to their hands as aforesaid, without authority and for no legitimate purpose of executing and carrying into effect the said plan and agreement for reorganization,"—and prays for an account of the "acts and proceedings of the said defendants, composing said committee, in and about the issue, receipt, transfer, and disposition of the preferred stock," bonds, securities, and moneys, and for an injunction restraining the issuing or delivery of the preferred stock, and for further relief.

The bill has been demurred to for want of parties, citizens of the same state as the plaintiff, and others, and for want of equity; and the demurrer has now been heard. That no rights of those not parties, and no rights of those who are that cannot be separated from the rights of those who are not, can properly be adjudged is not, and could not be, disputed; but the charges against the committee are said to be for breaches of the trust, in which each would act outside their common duty for himself, and not for the others, and the collateral note holders are said to be so constantly changing that they cannot be made parties, but are represented by J. P. Morgan & Co., trustees. The account prayed is, however, of the acts and proceedings of all the members of the committee, in which all would be involved, and none could be separated. An injunction might, perhaps, run against some, when all could not be reached, to prevent a wrongful violation by those within reach of equitable rights, if such should be found to exist. By the plan of reorganization, as understood, the plaintiff was to have stock of the new company in equal amount for that of the old; and the gist of his complaint seems to be that, by these acts and proceedings of the committee, his new stock will be diminished in value, through the depletion of assets, and increase of preferred stock so created. The agreement under which the plaintiff deposited his stock appears to provide that:

"The committee shall have absolute and complete discretion and latitude in the use, disposition, or distribution of all securities of the new company, which are specified in the plan as reserved for the purposes therein stated, and which are in excess of the securities there embraced in the defined issues for reorganization purposes; and it may use, dispose of, distribute, or apportion any of such reserved securities of the new company, in any manner and upon any terms which it may deem expedient or advisable, to promote or accomplish the substantial objects and purposes of the plan and of this agreement."

The handling of such immense amounts of different securities, held in so many rights, for the purpose of reorganization upon the same franchises, required, for the committee, very wide discretion in all directions. The plaintiff must have understood that, in depositing his stock under the agreement, it would necessarily be liberally construed towards conferring the powers required for accomplishing the desired result. He so agreed that they should do what they should see fit to do that he does not seem to be entitled to have the business stopped

:or criticism of its methods, although some of them, by themselves, may appear extravagant and unwarrantable, or even unconscionable. The whole arrangement of compromises, concessions, and inducements must be considered together, in order ·to· understand whether any of them are so wholly without the scope of what was intrusted to the committee that they should be suspended. The allegation of the foreign character of the purchases of securities, without setting forth what securities they were, or whether they were brought into the arrangement, or were used to bring it about, does not show that the money paid was so lost to the assets as to affect the amount of preferred stock that might properly be issued; nor does the allegation of the delivery of preferred stock to note holders, or to a syndicate, or for commissions, in matters of such great magnitude, show such a breach of trust by those of the committee participating in it that it should be stayed. There does not seem to be enough set forth of the whole proceedings to show that the plaintiff is equitably entitled to have this part stopped for the preservation of the value of his holding.

The general allegation of misapplication of money, which is so unknown that it cannot be stated, adds nothing to what is otherwise insufficient.