### EDENBORN v. SIM.

#### SAME v. ALDER.

(Circuit Court of Appeals, Second Circuit. June 27, 1913.)

Nos. 264, 265.

1. APPEAL AND ERROR (§ 1017*)—REVIEW—REFEREE'S FINDING.
   A referee's finding, in an action to recover a contribution to a syndicate agreement for fraud, that there was no actual fraud, but that defendant was guilty of constructive fraud, in that as agent for the subscribers he failed to disclose that he was interested in one of the properties to be purchased by the corporation in process of promotion, was conclusive on writ of error.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3911, 3961, 3996–4005; Dec. Dig. § 1017.*]

2. APPEAL AND ERROR (§ 842*)—SCOPE OF REVIEW—COMPLAINT—SUFFICIENCY.
   Whether a complaint states a cause of action is a question of law arising on the face of the record, which is reviewable on a writ of error in connection with the question whether the facts found by the referee support the judgment.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3316–3330; Dec. Dig. § 842.*]

3. CORPORATIONS (§ 573*)—STOCK SUBSCRIPTIONS—CONSTRUCTIVE FRAUD.
   A syndicate agreement provided for the purchase of stock of an existing corporation and certain coal lands, and for the sale of the property to the corporation as reorganized, the stock of which was to be issued to the syndicate subscribers. The property was purchased, the corporation reorganized, and the stock issued, when it was discovered that one of the syndicate managers had been personally interested in property sold to the reorganized corporation. *Held*, that any right of the subscribers to rescind for the manager's fraud must be worked out through the reorganized purchasing company, since there could be no rescission without restoring such manager to his former position, and, the contract having been fully executed, there remained no right in the individual subscribers to rescind.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2293–2296; Dec. Dig. § 573.*]

4. CORPORATIONS (§ 30*) — ORGANIZATION — SYNDICATE AGREEMENT — SECRET PROFITS.
   Where one of the managers of a syndicate organized to reorganize a corporation made a secret profit by selling certain property in which

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

he was personally interested to the corporation, such profit may be recovered by the company.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 97–100; Dec. Dig. § 30.*]

In Error to the District Court of the United States for the Eastern District of New York.

Actions by James Sim and by Thomas P. Alder against William Edenborn. Judgment for plaintiff in each case, and defendant brings error. Reversed. Certiorari granted by the Supreme Court of the United States.

See, also, 198 Fed. 928.

M. W. Littleton, of New York City (Owen N. Brown and Arleigh Pelham, both of New York City, of counsel), for plaintiff in error.

Theron G. Strong, of New York City, for defendants in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. A syndicate agreement recited that the subscribers deemed it advisable to raise $2,500,000 for the purchase of the ownership, control, and possession of the United States Iron Company and of a valuable coal property, and for the construction of certain furnaces and ovens, and for working capital, and it provided that the defendant, who was also a subscriber to the syndicate, with two other subscribers (who will not be mentioned again) should be managers; that the subscribers agreed severally with each other and with the managers that if a subscriber failed to carry out his agreement the managers might forfeit any moneys paid by him, and also hold him liable for any damages to the syndicate; that each subscriber made the managers his agents and attorneys; and that nothing in the agreement should make the subscribers partners.

It was originally intended to organize a new company, with a capital of $2,500,000, the syndicate subscribers to receive stock at par for the amount of their subscriptions. Subsequently the managers, for the purposes of economy, decided to use the charter of the United States Iron Company, and to that end increased its authorized capital from $1,000,000 to $2,500,000 and changed its name to the Sheffield Coal & Iron Company. At the time the agreement was signed the defendant Edenborn, who subscribed the sum of $500,000, owned 5,365 shares of the 9,250 shares of capital stock of the United States Iron Company outstanding; Ellwood, who subscribed $300,000, owned 2,200 shares; and the estate of Williams, which subscribed $51,800, owned 518 shares in the same company. All of these holdings were surrendered by the defendant Edenborn, as manager, to the reorganized company at 70 per cent. of their face value; the balance of the subscriptions of the defendant, Ellwood, and the Williams estate being paid in cash.

The plaintiffs, on learning that the defendant, when the syndicate agreement was executed, was personally interested in one of the properties to be purchased, and, while acting as agent for the syndicate, was selling his own property to it, rescinded their contracts as having been induced by fraud, and brought these actions against the defendant

for the amount of the subscriptions that they had paid, tendering him the shares that they had received in the reorganized company.

[1] The referee held that he was bound by the decision of the District Judge, fortified by that of the Court of Appeals in Heckscher v. Edenborn, 203 N. Y. 210, 96 N. E. 441, holding that the complaint stated a good cause of action, and that the only question before him was whether fraud, actual or constructive, had been established by the evidence. Upon this point he found that there was no actual fraud, but that Edenborn, being the agent of each of the syndicate subscribers, was bound to disclose to each that he was interested in one of the properties to be purchased, and was as agent selling his own property to the syndicate in payment of a part of his subscription. His failure to do this was held to be a constructive fraud. He also found that the plaintiffs were not guilty of laches. Upon this writ of error these findings are binding upon us and they support the judgment. David Lupton's Sons v. Auto Club, 225 U. S. 489, 32 Sup. Ct. 711, 56 L. Ed. 1177.

[2] But we are authorized to re-examine the question whether the complaint states a cause of action. This is a question of law arising upon the face of the record, and raises the question whether the facts found by the referee support the judgment he entered. Andes v. Slauson, 130 U. S. 435, 9 Sup. Ct. 573, 32 L. Ed. 989.

[3] Consideration of the agreement satisfies us that the defendant, as manager, was made the agent of himself and of every other subscriber separately in order to repel any inference of partnership between the subscribers. It was, of course, necessary to have some one to represent them all in carrying out the scheme. The performance by the defendant of his duties as manager was for and on behalf of the whole syndicate, and not for and on behalf of any one subscriber. He received the subscription of each subscriber on behalf of all, and made the contemplated purchase and outlays on behalf of all. So when, in carrying out the scheme agreed upon, the defendant sold his stock in one of the properties to be purchased, viz., the original United States Iron Company, to the reorganized Sheffield Coal & Iron Company, he sold it to that company as successor to the rights of all the subscribers to the syndicate. Conceding that it was a constructive fraud on his part not to inform the subscribers of his personal interest, that fraud was upon the whole syndicate when the purchase was proposed, and upon the reorganized Sheffield Coal & Iron Company when the purchase was made. It is a condition of rescission that the status quo shall be restored. How could any individual subscriber, by tendering the defendant his stock in the reorganized company, representing a proportionate interest in other properties greatly exceeding in value the amount of the defendant's interest in the original capital of the United States Iron Company, and demanding back his whole subscription, restore the defendant to his original position? And how could the defendant be made a nonsubscriber as to such of the syndicate subscribers as did not know of his personal interest in the original company and a subscriber as to those who did? We think that, if the syndicate

subscribers have any right of rescission, that right must be worked out through the purchasing company.

[4] Moreover, we do not see how even it could upon rescission restore the defendant to his original position. It may well happen that because of the peculiar situation of any particular case, no right of rescission exists in favor of one who has been led by fraud into a complicated agreement which has been fully executed. We think this such a case. On the other hand, any profit made by the defendant, or any damage sustained by the purchasing company as a result of this particular fraud, may be recovered by it. The result of the decision in the Court of Appeals would make a manager in a case like this, who had sold his own property to a syndicate for $1,000 without disclosing his personal interest, liable for the loss resulting from failure of the entire operation—perhaps $2,500,000. This strikes us as a conclusion to be avoided, if possible. Where judges have differed as much as they have in this case, no conclusion can be reached with confidence; but we arrive at that of the Appellate Division in Heckscher v. Edenborn, 131 App. Div. 253, especially for the reasons expressed by Justice Miller at page 266, 115 N. Y. Supp. 673.

The judgment is reversed.