**GUARANTY TRUST CO. OF NEW YORK v. WILLIAMSPORT WIRE ROPE CO.**

No. 959, In Equity.

District Court, M. D. Pennsylvania.

May 11, 1936.

H. Orvel Sebring, Jr., and W. James MacIntosh, both of Philadelphia, Pa., for Woolrich Woolen Mills, intervening petitioner.

Anthony H. Whitaker, of Philadelphia, Pa., for Jane S. Chase, intervening petitioner.

Welles, Mumford & Stark, of Scranton, Pa., and Shearman & Sterling, of New York City, for committee acting under Bondholders' Protective Agreement.

Cravath, de Gersdorff, Swaine & Wood, of New York City .(Harry· W. Mumford, Henry C. McGrath, and Charles H. Welles, 3d, all of Scranton, Pa., and R. N. Chambers, Edward S. Pinney, and Howard C. Petersen, all of New York City, of counsel), for Bethlehem Steel Corporation.

JOHNSON, District Judge.

This court has for disposition the intervening petitions of. Jane S. Chase and of Woolrich Woolen Mills, holders of certificates of deposit of first mortgage bonds of the Williamsport Wire Rope Company, deposited with the Bondholders' Protective Committee, representing the owners of bonds, hereinafter called Committee, to set aside a sale by the Committee to the Bethlehem Steel Corporation, hereinafter called Bethlehem, of all bonds deposited with the Committee. To these petitions answers were filed by the Committee and by Bethlehem, whereupon testimony was taken by the court, oral arguments made, and briefs filed. From these pleadings and the testimony taken thereon the material facts leading up to the controversy appear as follows: On September 16, 1932, receivers in equity were appointed for Williamsport Wire Rope Company, hereinafter called Williamsport. At that time there were first mortgage bonds outstanding in the principal amount of $1,221,000. Shortly thereafter the Com-

mittee, composed of Joseph P. Ripley, chairman, George DeB. Greene, Albert R. Thayer, and Frank C. Wright, was formed to protect the interests of the bondholders. A deposit agreement was formulated wherein the Committee was designated as party of the first part and such bondholders as should become parties to the agreement were designated as parties of the second part. The agreement provides that any holder of a bond may become a party to the agreement by depositing such bond with the designated depositary, and that a certificate of deposit shall be issued by the depositary for each deposit of bonds. Among its many terms, the agreement provides that the Committee shall have power to prepare and adopt a plan for the reorganization of Williamsport or for the sale, exchange, or other disposition of the deposited bonds, either for cash or for securities; that whenever the Committee shall adopt any plan, notice thereof shall be given, and any depositor may, within the period of thirty days beginning on the date of such notice, withdraw from the agreement upon surrender of his certificate of deposit; that any depositors who do not so withdraw shall be conclusively and finally deemed, for all purposes, to have irrevocably waived the right of withdrawal, and shall be conclusively and finally deemed, for all purposes, to have assented to the said plan and the terms thereof; that the Committee may abandon any plan which it has adopted or may modify or consent to the modification of any plan in any or all respects, either before or after the plan shall have been put in operation, and if, in the judgment of the Committee, any such modification shall not materially affect the rights of the depositors adversely, it shall, upon filing with the depositary and without notice, if the Committee shall so determine, become effective as to all the depositors.

On June 1, 1934, on petition of the Committee, this court granted the Committee leave to intervene and file a petition to have this court take jurisdiction of a proposed reorganization plan of Williamsport, which the Committee had adopted. On the same day, upon petition of the Committee, by consent of the complainant and defendant in the equity proceeding, this court took jurisdiction and accepted supervision of the reorganization proposed by the Committee and the securities to be issued pursuant thereto, and provided that it did not then determine, but reserved jurisdiction to de-

termine, whether the reorganization plan was fair, timely, and equitable to the creditors and stockholders, and further provided that any material change in the reorganization plan should be submitted by the Committee to the court for approval before becoming effective. The order authorized the Committee to circulate and promulgate the reorganization plan under the supervision of this court and to send notice, copy of which was annexed to the petition, to bondholders which advised them of the plan of reorganization and of their withdrawal rights, as well as the method of becoming parties to the reorganization plan. The order further authorized the Committee to cause the depositary under the deposit agreement to issue certificates of deposit to those bondholders who become parties to the reorganization by depositing their bonds with the depositary, and provided that the transaction contemplated by the reorganization plan is a bona fide reorganization under the jurisdiction of this court within the provisions of subdivision 3 of section 4 of the Securities Act of 1933, 48 Stat. 77, and that the securities issued pursuant to the reorganization plan, including certificates of deposit, are exempt from registration under said act.

The reorganization plan adopted by the Committee, a copy of which was annexed to the Committee's petition, states that the Committee had received from Bethlehem a proposal for the reorganization of Williamsport, under the supervision of this court, to be effected by the acquisition, upon foreclosure of the mortgage securing the Williamsport bonds, or by other judicial proceedings, of all the properties and assets of Williamsport, in consideration of the delivery by Bethlehem of certain Bethlehem securities, to be distributed to Williamsport bondholders and unsecured creditors; that the four chief unsecured creditors of Williamsport, being Philadelphia National Bank, Baltimore Trust Company, and Guaranty Trust Company of New York, whose claims aggregated September 19, 1935, $543,484.49, and Bethlehem Steel Company, whose claim was $716,753.18, had assented to the plan, and that the Committee had accepted the proposal of Bethlehem subject to the conditions therein contained; that the plan does not make provision for holders of preferred or common stock of Williamsport. Annexed to the plan is a financial statement of Williamsport, as of February 28, 1934, prepared by Arthur An-

derson & Co. The total unsecured indebtedness of Williamsport at the beginning of the receivership was $1,298,565.78.

Bethlehem's offer or proposal, in substance, provides that upon acquisition of the properties and assets of Williamsport, it would distribute for each $1,000 principal amount of Williamsport bonds, one $600 principal amount Bethlehem bond and three shares of its common stock, making a total approximate value of $684; for the $1,298,-565.78 of unsecured Williamsport indebtedness, Bethlehem bonds, $431.46 principal amount, for each $1,000 of such unsecured indebtedness, or approximately 43 cents on the dollar. The offer contains several conditions precedent to Bethlehem's liability, one of which is that the reorganization plan shall have been approved by and carried out under the supervision of the court and that Bethlehem shall have received an opinion of its counsel to the effect that the Bethlehem bonds and stocks to be delivered pursuant to the reorganization may be lawfully so delivered without authorization or consent of, or registration with any governmental agency, board, or commission.

The Committee, after adopting the plan, sent notice to the bondholders of the fact of adoption and of the bondholders' right of withdrawal within thirty days. At the expiration of the withdrawal period, on July 5, 1934, one bondholder, neither of petitioners, withdrew, leaving $632,000 principal amount of bonds on deposit and not withdrawn, or 51 per cent of the entire bond issue. At that date there had been deposited an additional $208,000 principal amount of bonds. On August 17, 1934, the Committee declared the plan operative. At that date the total principal amount of bonds on deposit aggregated $1,052,000, or over 86 per cent of all outstanding bonds.

In June, 1934, Messrs. Gilmore and Hartke, officers of Williamsport, sought aid of Mr. Preston, of Preston James Yeiser & Co., in forming another plan of reorganization. Pursuant thereto, Preston James Yeiser & Co., in September, 1934, obtained a commitment from United States Steel Corporation for the purchase of $500,000 of proposed second mortgage bonds under the second plan of reorganization, hereinafter designated as the "Company Plan." Thereafter the Company Plan was prepared and dated October 8, 1934.

On October 10, 1934, Mr. McMath, vice president of Bethlehem, suggested to Mr. Ripley, chairman of the Committee, a modification of the plan of reorganization, whereby the deposited bonds could be forthwith transferred to Bethlehem for cash, and a cash distribution immediately made to the depositors in lieu of requiring them, as provided by the original plan, to wait until the transfer of the Williamsport properties to Bethlehem for the distribution to them of the Bethlehem securities. Mr. Ripley indicated that such a suggestion would be agreeable to him. The necessary documents were accordingly prepared. On October 18, 1934, Mr. James, of Preston James Yeiser & Co., sought to interview Mr. Ripley and Mr. McMath with reference to the Company Plan, but was unable to locate Mr. Ripley on that day. On Friday, October 19, 1934, the Committee executed the modification of the plan, whereby the bondholders would get an immediate distribution of $700 in cash for each $1,000 principal amount of Williamsport bonds, and the deposited bonds were delivered to Bethlehem for the necessary amount of cash; Bethlehem having indemnified the Committee against any liability on account of the modification. On Monday, October 22, 1934, notice of the modification and that cash in the amount of $700 for each $1,000 Williamsport bond was ready for distribution was sent to holders of certificates of deposit.

On October 24, 1934, the petition of Jane S. Chase was presented to the court. On that day this court permitted her to intervene and granted ex parte a temporary injunction, having the effect to restrain any further action in pursuance of the modification of the reorganization, the distribution of cash, and the transfer of bonds thereunder. Upon petition of the Committee, the restraining order was vacated on October 27, 1934, except in so far as it applied to petitioner's bonds. Thereupon distribution of the cash was continued, and it appears that at or about the time of the hearing of this cause, holders of certificates of deposit, representing about $993,000 principal amount of bonds, had accepted the cash distribution under the modified reorganization plan. On November 5, 1934, the intervening petition of Woolrich Woolen Mills was filed. On the same day, Williamsport filed a petition under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207), based on the Company Plan. By agreement the intervening petitions and the petition under section 77B were heard together and the evidence produced applied to both proceedings. The petition under sec-

tion 77B was dismissed by opinion and order of this court in Re Williamsport Wire Rope Company, 10 F.Supp. 481.

The Chase and Woolrich petitions are substantially the same and present the same issues. The substance of the averments of both are that the petitioners, owners of $13,000 principal amount of Williamsport bonds, deposited them with the Committee in pursuance of the reorganization plan sponsored by the Committee; that the reorganization plan provided that its consummation was subject to the approval of this court; that by letter the Committee informed the bondholders that this court had assumed supervision of the reorganization plan; that in response to said letter petitioners consented to the reorganization plan in reliance on the fact that it required approval and supervision by the court; that the Committee modified the reorganization plan by selling the bonds to Bethlehem for $700 per $1,000 principal amount of bonds; that the modification by the Committee constitutes a violation of the deposit agreement, the original plan of reorganization, the order of court dated June 1, 1934, and constitutes a breach of the Committee's trust, in that said action was taken without court approval and without notice to bondholders or opportunity to withdraw and with knowledge of the Committee that Williamsport earnings had substantially increased between the date of the financial statement of February 28, 1934, and the date of the modification, that Williamsport's cash balance had increased during said period by over $200,000 and the liquid assets by $437,740, and that a petition under section 77B was about to be filed which contained a plan that might be more favorable to the bondholders. The petitioners further aver that the actual value of the Williamsport inventory was more than $200,000 in excess of the values indicated by the financial statement of February 28, 1934, as confirmed by subsequent sales of inventory; that the modification adversely affected, to a material degree, the interest of bondholders by depriving them of the protecting feature of court approval.

The petitioners pray that the Committee submit the modified plan for the court's approval; that the transfer of bonds to Bethlehem be set aside; that Bethlehem be directed to return the deposited bonds to the Committee to hold the same subject to the terms of the deposit agreement, the Committee plan of reorganization, and the continuing jurisdiction of this court as provided in the court order of June 1, 1934; that the Committee be directed to reimburse Bethlehem to the extent that funds paid to it by Bethlehem shall not have been disbursed by the Committee; that the Committee be directed to reissue certificates of deposit to all parties who have surrendered their certificates for cash; and that the Committee be directed to notify the certificate holders that the funds disbursed to them should be returned to the Committee for the account of Bethlehem.

From the petitions and answers thereto, the evidence taken thereon, and the arguments and briefs of counsel, the main contentions appear as follows:

First, the petitioners contend: (1) That the bondholders' Committee was acting in a fiduciary capacity and must be held to the highest degree of accountability. (2) That, under the order of June 1, 1934, the plan of reorganization is subject to the supervision and approval of the court. (3) That the plan of reorganization cannot be modified to evade approval of the court. (4) That the modification was material, and the delivery of the bonds to Bethlehem thereunder without the approval of the court was a breach of trust, in that (a) Bethlehem instigated receivership; (b) Bethlehem urged the formation of the Committee and assisted in compiling a list of bondholders; (c) that deposit agreement was sent to Bethlehem for criticism prior to submission to bondholders; (d) that Bethlehem assisted in the audit used in the plan and that Bethlehem's estimate of reserves against inventories was used in the plan, but reference to the source of the reserve was deleted at the request of Bethlehem; (e) that the reserve was excessive; (f) that the Committee knew of Williamsport's improved financial condition but did not consider the same or inform bondholders; that the Committee knew of the Company Plan and did not acquaint the bondholders thereof, but secretly co-operated with Bethlehem to thwart the plan by delivery of the bonds and at the same time obtained from Bethlehem an indemnity agreement against liability for that action; and that the modification presented an increase in value of bondholders' equities which would arise by competitive bidding. (5) That the action of the Committee in modifying the plan without court approval was a fraud on the court, by using the court's name to secure assents to the plan in advertising the fact that the court had assumed supervision of the plan and that the plan would be con-

876

summated only upon the court's approval. (6) That the Federal Securities Act of 1933 (see 15 U.S.C.A. § 77a et seq.), in exempting securities under supervision of the court, contemplates protection by the court; and that Bethlehem and Committee submitted the plan for supervision by the court to avoid registration under the Securities Act. (7) That Bethlehem, having full knowledge of the Committee's trust, became a constructive trustee of the bonds in accepting delivery without court's approval. (8) That the relief sought is fair, timely, and equitable.

Secondly, the respondents contend that: (1) The deposit agreement constituted a contract to which all bondholders were parties, by which there was delegated to the Committee the power to adopt a plan and to modify any plan so adopted, if, in the Committee's judgment, the modification did not materially affect the depositors, adversely. (2) That the Committee Plan was adopted pursuant to the powers given by the deposit agreement and became binding on all depositors who did not withdraw within the given period, binding the petitioners here who did not withdraw. (3) That Committee, in adopting the modification, was within the authority granted by the deposit agreement and Committee Plan, (a) since a sale of deposited bonds could have been originally included in a plan, any modification could so provide; (b) since no right of withdrawal was required to be given upon modification because in the opinion of the Committee, which was conclusive, the modification did not adversely affect bondholders; (c) since, in determining whether bondholders were adversely affected, the court must consider only their financial interest and that the bondholders here received $700, in cash immediately, instead of approximately $684 in securities at a later time. (4) That the contractual obligations of the parties and the delegation of power to the Committee were not altered by assumption by the court of jurisdiction and supervision of the plan because the bondholders' assent to the plan was not conditional on the court's approval of the plan, since their assent to the plan made them proponents of the plan. The court will inquire into the fairness of the plan only to nonassenting parties. (5) That the order of June 1, 1934, only required submission to the court of material modifications affecting bondholders adversely, and this modification gave to bondholders an increased amount of money, and the court still has the same property and securities to administer and the same power to construe the provisions to be made to security holders on any reorganizaiton, since the only effect of the modification is to change ownership of the bonds. (6) That the evidence does not show anything in the relations between Bethlehem and Williamsport or the Committee which reflects on the good faith of Bethlehem's modification proposal or the action of the Committee in accepting the proposal and modification, or which would relieve petitioners from their contractual obligations; (a) Bethlehem's interest in Williamsport and the Committee was only natural of a large creditor; (b) petitioners fail to show what the proper inventory reserve should be while the evidence, including recent sales from inventory, supports the Arthur Anderson & Co. reserve of $304,000; (c) circumstances surrounding the modification show that Committee's actions were proper and that they knew that Williamsport bonds had sold for 9½ to 35, that the modification assured $700 per bond; that Bethlehem's proposal would expire on December 31, 1934; that the Company Plan was the only other plan offered and was not appealing to the Committee. (7) That the increase in Williamsport's cash position was based on an unwarranted and large value placed on inventory by petitioners, and was partially due to the fact that the receivers of Williamsport paid no interest on indebtedness and has no sinking fund; that even if there were an increase in cash, it did not indicate an increase in total net value based on earnings, and this increase in cash did not relieve petitioners from their contractual obligations. (8) That rescission is not available against Bethlehem because (a) petitioners have failed to show that they can tender the distributed moneys and place the parties in status quo; (b) Bethlehem dealt at arm's length with Committee, occupied no fiduciary relation to petitioners, and was a bona fide purchaser without notice; (c) Committee, if regarded as an agent, acted within apparent scope of its authority. (9) That any relief granted must be restricted to petitioners because they do not purport to bring a representative action, are not joined by any other bondholders, but, on the contrary, the large majority of bondholders have taken an adverse position by accepting distribution; and because the relief demanded cannot be extended to those who have accepted benefits of the modification since they have rati-

fied the Committee's acts and estopped themselves. (10) That the Securities Act is not applicable; (a) no securities were issued under modification; (b) the issuance of certificates of deposit under the original plan was held by the court to be a transaction exempted from registration under the act; (c) the spirit of the act has been complied with, since all records were on file with the court and open to inspection.

The question presented on the petitions is whether Bethlehem has good title to the deposited bonds transferred to it by the Committee under the modification, and if not, whether the petitioners can effect the return of the bonds to the Committee.

It is not disputed that the deposit agreement which was voluntarily entered into by the parties constituted a contract between the Committee and all of the depositing bondholders, including the petitioners, and that the Committee was acting in a fiduciary capacity. The deposit agreement vested broad powers in the Committee to effectuate such disposition of the deposited bonds which would attain the best financial return to the bondholders. The Committee was vested with power to adopt a plan of reorganization or of sale of the deposited bonds, and with power to modify any plan either before or after the plan should be put in operation, and, if in the judgment of the Committee, which was conclusive, any such modification did not materially affect the rights of depositors adversely, it became, without notice, if the Committee so determined, effective as to all depositors. After notice of the adoption of a plan, the bondholders were to be given 30 days within which to withdraw. It is not disputed that the Committee adopted a plan, gave the required notice of withdrawal, all in accordance with the agreement. Nor is it disputed that petitioners did not withdraw. Accordingly, the petitioners are bound by the terms of the contract unless the Committee in adopting and executing the modification went beyond the terms of the contract or committed a breach of trust.

The Committee, in adopting the modification, was within the specific authority granted by the deposit agreement. One of the things contemplated by the agreement was a sale of the deposited bonds, and under the broad powers conferred, a modification could be made to attain that result. The agreement must be construed towards conferring the powers required for the desired results. Venner v. Fitzgerald (C.C.) 91 F. 335. The agreement further specifically provided that no right of withdrawal was required to be given to depositors upon modification of the plan which modified plan shall be effective if, in the judgment of the Committee, it did not materially affect the right of the bondholders adversely. It is undisputed that it was the judgment of the Committee that the modification did not materially affect the rights of the bondholders adversely. Accordingly, if the Committee acted in good faith, the parties are bound by the contract. See Habirshaw Electric Cable Co. v. Habirshaw Electric Co., Inc. (C.C. A.) 296 F. 875, 43 A.L.R. 1035.

Upon careful consideration of the evidence, the court is of the opinion that the petitioners have failed to establish that the Committee violated any fiduciary duties owed to the bondholders. The court has made separate findings of fact and, therefore, in discussing here the allegations of breach of duty, will briefly touch on the evidence. The allegations of breach of trust on the part of the Committee, as contained in the pleadings, relate to the modification by the Committee with knowledge of an excessive inventory reserve, the increased cash position of Williamsport, and of a rival plan of reorganization.

Petitioners' allegations as to the inventory reserve is in effect that the inventory reserve placed on the books by Williamsport in the amount of $93,544 was proper, but that used in the plan and contained in the financial statement prepared by Arthur Anderson & Co., in the amount of $304,000, was excessive by over $200,000. The petitioners failed to produce evidence to support the reserve used by Williamsport or to show that the Arthur Anderson & Co. reserve was excessive. Respondents, on the other hand, produced evidence to support the $304,000 inventory reserve. Day & Zimmerman, independent engineers, estimated the reserve to be $280,000; D. G. Sherman, an engineer employed by Williamsport, estimated the reserve to be $317,- 054. Mr. Gilmore and Mr. Hartke, and Mr. Ballard, witnesses for the petitioners, had previously made estimates of $254,000 and $304,000, respectively. The Arthur Anderson & Co. financial report stated what the Williamsport reserve was and also that estimates of reserve ranged from $254,000 to $304,000. In view of these facts, any bondholder reading the financial statement was informed of the different estimates, and the

court is unable to see how bondholders were misled, or that the petitioners have proved the reserve of $304,000 to be excessive. Neither does the evidence of subsequent sales from inventories materially aid the petitioners. Reserves are but estimates, and in view of supporting evidence of the Arthur Anderson & Co. reserve, the Committee, in using the estimate, was not guilty of misrepresentation or breach of trust.

■ The respondents do not deny that there was an increase in the cash position of Williamsport between the adoption of the Committee Plan and the modification thereof, but contend that the increase was the result of the greater valuation placed upon the inventory by the petitioners than by respondents, and the nonpayment of interest on indebtedness and sinking fund charges, which does not indicate an increase of earnings. There is some evidence to support this contention. The increase in cash did not in itself show an increase in the total value of Williamsport, and in view of this fact, together with the fact that the Committee, acting in good faith, was of the opinion that they were bound under the deposit agreement to carry out the plan which they had accepted, they did not commit a breach of trust in accepting a modification which in fact gave to the bondholders an amount greater than was provided in the original plan.

Before adopting the modification, the Committee knew of the "rival" company plan. The evidence shows that the members were familiar with its provisions and were of the opinion that it was not feasible and did not offer a better return to the bondholders than the committee plan. After hearing, this court later dismissed the petition advocating the company plan on the basis that it was not feasible. In view of the evidence the Committee did not commit a breach of trust in adopting the modification with knowledge of the proposed company plan.

The court by its order of June 1, 1934, has already held that the reorganization under the Committee Plan was a transaction exempt within the meaning of section 4 (3) of Securities Act of 1933 (48 Stat. 77). No securities were issued under the reorganization plan. Certificates of deposit were the only instruments in the nature of securities that were issued. Petitioners do not complain that the issuance of those certificates was not an exempt transaction or that they were issued in violation of the Securities Act.

■ The relief sought by petitioners is the return of the bonds sold by the Committee to Bethlehem and the return of the consideration to Bethlehem. Such relief would amount to a rescission of the sale of bonds. Even assuming that petitioners are entitled to rescind the contract, they have failed to offer or to show that they can restore the status quo by returning the consideration to Bethlehem. This is an essential prerequisite of rescission, without which the relief cannot be granted. Edenborn v. Sim (C.C.A.) 206 F. 275.

■ The deposit agreement voluntarily entered into by the bondholders was a private contract which the court cannot change. See Guaranty Trust Co. v. International Steam Pump Co. (C.C.A.) 231 F. 594, 595; Conley et al. v. International Pump Co. (D.C.) 237 F. 286. The fact that the court assumed jurisdiction over the reorganizaton plan did not alter the contractual obligation or make conditional the assents to the plan of reorganization. The assenting parties became proponents of the plan assented to and in effect say that the plan is fair as to them. They are not interested in whether the plan is fair or makes proper provisions as to other parties; but the court will consider the interest of other parties at the proper time. When a great majority of a class are proponents, that is strong evidence that the plan is fair to that class, and the court should hesitate to upset the transaction when only a negligible minority of that class who have assented to the plan object thereto. Lyman v. Kansas City & A. R. Co. (C.C.) 101 F. 636, 642; Jameson v. Guaranty Trust Co. of New York (C.C.A.) 20 F.(2d) 808, 815. In this case bondholders representing only $13,000 out of $1,221,000 came into court to object. In such case the objecting minority cannot stand as representatives of a class. Post v. Beacon Vacuum Pump & Electrical Co. (C.C.A.) 84 F. 371; Fischer-Schein Syndicate et al. v. Lee et al. (C.C.A.) 295 F. 485. Aside from the question whether the bondholders are bound by their contract and whether the Committee violated their trust, the fact that only the two bondholders objected to the adequacy of the price paid for the bonds and practically all of the remainder accepted the cash consideration is evidence that the price was not inadequate and the court

cannot find that it was inadequate. The price paid is not so inadequate as to warrant a court of equity to interfere.

All of the depositing bondholders originally agreed that approximately $684 in securities to be delivered at a subsequent time was a fair price for each bond. If they were satisfied with that amount, they certainly are not in a position to object to a modification which gave to them $700 in cash immediately. Such a modification is not the material modification which the order of June 1, 1934, required to be submitted for the court's approval. The modification, however, did not eliminate the necessity for the submission of the plan of reorganization for approval by the court. This must still be done under the provisions of the plan and the order of cr  ʼ. Upon such submission, the court ~      ʼder whether the plan is fair ~        ʻᵤ to parties not provided for t,        ᴧ and to nonassenting parties. ꞃ.      ᵷ et al. v. American Sumatra Tobaccᵤ Co. (D.C.) 14 F.(2d) 168, 169.

However, the court has already indicated that it was of the opinion that the stockholders of Williamsport have an equity and that any plan which does not provide for that equity would not be approved. The Committee Plan makes no provision for stockholders.

The court is of the opinion that the sale of the Williamsport bonds to Bethlehem transferred good title to the bonds and consequently the intervening petitions must be dismissed. The only effect of this transaction is to change ownership of the bonds from the various depositing bondholders to Bethlehem. The enforcement of this deposit agreement between the Committee and the depositing bondholders in no way affects the res in possession of the court. Habirshaw Electric Cable Co. v. Habirshaw Electric Cable Co., Inc., supra. The court has the power and duty to protect the interests of all parties having equities and to consider any plan of reorganization.

Detailed findings of fact and conclusions of law have been submitted by the parties, which are answered and filed herewith.

And now, May 11, 1936, this cause came on to be heard and was argued by counsel, and upon due consideration thereof, it is ordered, adjudged, and decreed as follows, viz.: That the intervening petitions of Jane S. Chase and Woolrich Woolen Mills be, and hereby are, dismissed, and the restraining order, as modified, granted at the instance of the petitioner, Jane S. Chase, be and hereby is vacated.