## FIRST UNIVERSALIST CHURCH *v.* PUNGS.

1. CONTRACTS—SUBSCRIPTION TO PURCHASE CHURCH SITE—CONSIDERATION.

    An agreement by several subscribers to pay a certain percentage, respectively, of the cost of a church site, is supported by a sufficient consideration, and is not void because no payee is named therein.

2. SAME—ESTOPPEL.

    Defendant and others signed a subscription by which they severally agreed to pay a certain percentage of the cost of a church site, such cost to be fixed by appraisers in accordance with the terms of an option to purchase contained in a lease under which the church then occupied the property.    An appraisement was made and the price agreed upon, but not in exact conformity with the terms of the lease.    The church being unable to pay for the property at the expiration of its option, an extension of time was arranged for on its agree-

ment to pay interest, and the title was taken in the name of a third person, who contracted the property to the church.   *Held,* that defendant, having participated as a trustee of the church in carrying out the purchase in the manner stated, was estopped to assert that his subscription was on the implied condition that the full purchase price should be subscribed, and to rely on the several departures from the terms of the subscription agreement, as a defense to an action for his subscription.

Error to Wayne; Carpenter, J.   Submitted April 17, 1901.   Decided May 21, 1901.

*Assumpsit* by the First Universalist Church against William A. Pungs to recover the amount of a subscription.   From a judgment for plaintiff on verdict directed by the court, defendant brings error.   Affirmed.

*Barbour & Rexford,* for appellant.

*Walter E. Oxtoby* (*Wilkinson, Post & Oxtoby,* of counsel), for appellee.

LONG, J.   The parties to this cause do not disagree upon the facts.   Plaintiff is an incorporated church society.   In February, 1880, by a written lease, it leased the property now occupied by its church edifice from the McKinstry estate for an annual rental of $250, payable quarterly.   The lease contained an option under which the land and building thereon might become the property of the church upon its giving to the McKinstry estate written notice of its intention to purchase on or before April 1, 1894, and upon payment of a price to be determined in the following manner: Each party to the lease to select an appraiser, and these two to select a third, and the three persons so chosen to appraise the land without regard to improvements thereon.   On January 3, 1893, the church society being desirous of taking advantage of the option contained in the lease, a meeting was held at the house of Mr. Simon J. Murphy.   At this meeting a subscription paper was presented to those pres-

ent, among whom was defendant, Pungs, who was at that time a member of the board of trustees of the society. This subscription paper, after reciting the conditions of the lease under which the property could be purchased by the society, stated:

"The value of the land or the debt we have to meet may be represented by 100 per cent. It cannot be known exactly what the amount will be. It can be approximated. You are asked to sign what proportion you are willing to assume—subscription—for the purpose of paying for the lot on which the Universalist church, the Church of our Father, stands in the city of Detroit, Michigan; the value of said lot to be determined according to the terms of the contract existing between the estate owning the lot and the church occupying the lot. We, the undersigned, do hereby agree to pay such proportion or per cent. of the indebtedness, when determined according to the terms of the contract, as is set opposite our names. These subscriptions shall be due on or before May 1, 1894."

Mr. Murphy subscribed 25 per cent., Mr. Newcomb 25 per cent., Mr. Bowling 10 per cent., and defendant, Pungs, subscribed ".05." Seven others subscribed per cents., and still others subscribed fixed amounts. The percentages subscribed amounted to 85 per cent., and the fixed subscriptions to $1,300 additional.

While the record does not contain a notice served on the McKinstry estate by the church society of its intention to take the property under the terms of the lease, it does contain an acknowledgment of the receipt of the notice in a paper signed by the trustee of the estate and other parties, the heirs, who were interested in the estate. This writing also contains a recitation of the appointment of George Dingwall as the appraiser to act on the part of the estate, and an agreement that, in case the two appraisers appointed by the parties agreed upon the value of the property, the estate would waive the appointment of a third appraiser, and that the appraisal by the two should have the same force and effect as though made by the three. The church society appointed Samuel A. Plumer, and the clerk of the church signed an agreement that, if

the two appraisers agreed, the appraisement should stand. The two appraisers thus appointed appraised the value of the land, without regard to improvements, at $30,000.

On April 26, 1894, a special meeting of the trustees of the church was held, at which the defendant, Pungs, does not appear to have been present. At this meeting a resolution was adopted authorizing the president and clerk to arrange for an extension of time for the payment of the appraisal of $30,000 to September 1, 1894, with interest. Another trustee meeting was held on September 4, 1894, at which Mr. Murphy reported that no word had been received from the McKinstry estate. From this it appears that the society was making every effort to take care of its right to purchase. Another meeting was held December 2, 1894, at which time it was reported that the McKinstry estate did not wish to accept the $30,000 without the $900 interest which had accrued. Matters finally culminated by the calling of a special meeting at the house of Mr. Murphy on December 10, 1894. The call was signed by all the trustees, including the defendant, who signed, " Wm. A. Pungs. Yes." Accordingly, a meeting was held on this date, at which Mr. Pungs was present. A plan was adopted by which Mr. Murphy was to be substituted for the McKinstry estate, and assume its relations with the church. The McKinstry estate was, therefore, on motion of Mr. Pungs, authorized to execute a contract with Mr. Simon J. Murphy for the church property, and the church officers were authorized to contract with Mr. Murphy for the property. December 31, 1894, another trustee meeting was held, at which defendant, Pungs, was present. A resolution was here passed unanimously which recited that the society had elected to purchase the property, and was under obligation to pay to the McKinstry estate $30,000 and interest; that the church was unable to raise the necessary sum, and Mr. Murphy had consented to assume the obligation, and extend the time of payment to himself. The resolution requested the McKinstry estate to execute a contract to Mr. Murphy.

126 MICH.—43.

Another resolution was adopted unanimously, directing the church officers to contract with Mr. Murphy for the property for the sum of $30,000. Accordingly, the McKinstry estate, by an instrument dated November 1, 1894, did contract with Mr. Murphy for the purchase by him of the church property; and on November 1, 1898, Mr. Murphy received a deed of the land from the McKinstry estate, and is now the owner of the property. The church entered into a contract with Mr. Murphy for the purchase of the property from him for $30,000. The subscriptions were never abandoned nor allowed to lapse. A record book was kept, in which the various subscribers were charged with the amounts severally subscribed; and upon these amounts interest has been regularly paid, and in many cases the principal likewise.

Defendant, William A. Pungs, failed to pay the amount of his subscription, and this action is brought to recover such amount. The court below directed the verdict in favor of plaintiff for $1,986.24, which is conceded the correct amount, if plaintiff be entitled to recover at all. The defendant brings error.

The argument of defendant's counsel is:

1. That there was no binding contract between the parties.

2. That the extension of time of payment sought by the plaintiff by agreeing to pay interest upon its purchase was not done in reliance upon the subscriptions, and, if it were, it released defendant if he did not consent to it, because his subscription was for the payment presently of a valid appraisement, without interest.

We think the subscription was valid and binding upon the defendant in its inception, within the rule laid down by the court many times. In *Underwood* v. *Waldron*, 12 Mich. 73, the defendant was sued upon his subscription made for the purpose of purchasing land or erecting a college building. This court held that, where a subscription is made by which the signers promise to pay the several sums subscribed for the purpose of erecting a building for educational purposes, and something has been

done, or some liability or duty assumed, in reliance upon the subscription, in order to carry out that object, the promises are binding, and may be enforced, although no pecuniary advantage is to result to the promisors.    It was said·

"We cannot hesitate to hold that a school, or church, or other similar institution which men are anxious to have built, and promise to pay for, is 'valuable' to them in a legal sense.    In most cases there is a pecuniary value in the enhanced price of neighboring property.  (But, apart from this, any worthy purpose for which men gener-' ally are willing to expend money must be regarded by courts as worth money when it is promised. )  We know of no safer test to apply to human transactions."

In *Comstock* v. *Howd*, 15 Mich. 237, it was expressly held that a subscription by which several persons promised to pay the sums set opposite their names to provide a free dinner on the Fourth of July to returned soldiers was legally binding, notwithstanding no promisee was named, and might be collected in the name of one of the number, who was selected by the rest to collect and disburse the money.    It was also held that, the object being a meritorious one, and the subscription by the defendant being an inducement to others to subscribe and pay their money, both constituted a valid consideration.

In *Allen* v. *Duffie*, 43 Mich. 1 (4 N. W. 427, 38 Am. Rep. 159), the action was brought upon a subscription made for the purchase of a house of worship for a religious society.    One Morrill had built the church on his own land, and the society was desirous of buying it.    The donors did not actually subscribe, but announced their gifts at a church service on Sunday, and a Mr. Mills subscribed for them.    The owner deeded the property to the church society.    Mr. Allen was called upon for a note for his subscription so made by Mills under his ( Allen's ) direction, but refused to give it, saying his word was as good as his note, and, anyway, that the promise was made on Sunday, and was void.    It was held that a recovery could be had for the amount of Allen's subscription, and that a

mutual subscription could be supported, even though no payee was named, provided the object be made definite and certain; that the mutual promises of the subscribers were all the consideration needed to support the promise.

The subscription in the present case was made, it was for a meritorious purpose, and was of sufficient certainty as to the object sought and the amount to be paid. The claim that the defendant was relieved from his undertaking by the after-agreement to pay the interest of $900 cannot be upheld. The record shows conclusively that at a meeting held by the trustees, at which defendant was present, on December 31, 1894, he assented to pay the interest then demanded by the estate.

It is claimed that the subscription by defendant was conditioned upon the full amount being raised, and that the court erred in holding the defendant waived that condition. We think the action taken by the defendant in the meetings held by the trustees amounts to a waiver of that claim, if such subscription was made upon any such condition. The language of the subscription paper has been heretofore set out. It is not conditioned on the full amount being subscribed. Each subscriber absolutely and unconditionally agrees "to pay such proportion or per cent. of the indebtedness, when determined according to the terms of the contract, as is set opposite our names. These subscriptions shall be due on or before May 1, 1894." The subscriptions were made January 3, 1893, and the option to buy did not exist until April, 1894.

It is the further claim that the court erred in holding that the defendant waived an appraisement according to the terms of the lease; also in holding that the plaintiff's inability to purchase from the McKinstry estate did not render the defendant's subscription void; and in holding that the plaintiff's contract with Murphy was not a waiver of defendant's subscription. The facts have been very fully set out. The defendant acquiesced in the taking of the title in the name of Mr. Murphy, and also in the appraisement made by the two appraisers. He

made the motion that Mr. Murphy take the contract from the McKinstry estate, and acquièsced in the action taken at the same meeting by which it was agreed that the plaintiff should enter into a contract with Mr. Murphy. We think the court below was not in error in his rulings.

We find no error in the record, and the judgment must be affirmed.

Hooker, Moore, and Grant, JJ., concurred. Montgomery, C. J., did not sit.