### FULLER v. VENABLE et al.

(Circuit Court of Appeals, Fourth Circuit. November 6, 1902.)

#### No. 433.

1. CORPORATIONS—REORGANIZATION AGREEMENT BETWEEN BONDHOLDERS—ENFORCEMENT IN EQUITY.

A committee, authorized thereto by holders of bonds of an insolvent corporation, on which the interest was in default, formulated and carried out a plan of reorganization by a foreclosure and purchase of the property, using in payment therefor bonds and matured coupons deposited by the holders participating, who received certificates exchangeable for bonds of the new company when organized. Complainant alone, of those who joined in the reorganization agreement, before depositing his bonds, de-

tached the matured coupons therefrom, and received payment of the same from the proceeds of the sale. *Held,* that he was subject to and affected by all the equities arising out of the agreement, and that a court of equity would not enforce such agreement for his benefit, by requiring the committee to deliver to him the bonds of the new company, until he placed himself on an equality with the other bondholders, by returning the money collected on the coupons.

2. RES JUDICATA—MATTERS CONCLUDED BY JUDGMENT.
The action of the court in the foreclosure suit in decreeing payment in full of complainant's coupons, which, by the terms of the mortgage, were given precedence over the principal of the bonds, was not an adjudication of the rights of the bondholders, as between themselves, under the reorganization agreement.

Appeal from the Circuit Court of the United States for the District of Maryland.

For opinion below, see 108 Fed. 126.

Thomas W. Miller, for appellant.

Edwin G. Baetjer and Charles McH. Howard, for appellees.

Before GOFF and SIMONTON, Circuit Judges, and KELLER, District Judge.

GOFF, Circuit Judge. The Roanoke Street Railway Company, a corporation organized under the laws of the state of Virginia, had the following capitalization: Common stock, $300,000; preferred stock, $150,000; and first mortgage 6 per cent. bonds, $350,000. Of the first mortgage bonds, $192,300 had been sold and issued by the company, and the residue, $157,700, had been issued as collateral security for certain debts of the railway company, as well as for the debts of another corporation, called the Roanoke Electric Light & Power Company. The two corporations mentioned were closely allied with each other, and, when overtaken by financial disaster, were reorganized together; the properties of both being purchased by a reorganization committee, and conveyed to a new company. On May 1, 1897, the railway company made default in the payment of all of its interest coupons then maturing. A number of the bondholders and stockholders of the railway company, together with those interested in the power company, made an effort to reorganize the railway company without resorting to a foreclosure suit. A plan of reorganization, dated October 11, 1897, was formulated, and an effort was made to obtain the assent thereto of all the bondholders and stockholders of the two companies mentioned. By the terms of this plan, all of the bonds and stock of the subscribers thereto were to be deposited with the Mercantile Trust & Deposit Company of Baltimore, and a new corporation was then to be organized, in which the properties of the two companies were to be vested. The plan of reorganization proposed the following capitalization for the new company: First mortgage 5 per cent. bonds, not exceeding $180,000; second mortgage 4 per cent. income bonds, not exceeding $192,000; and stock, $180,000. The bonds and stock were to have been issued in the following manner: The first mortgage bonds were to be sold, and the proceeds used only for the purpose of paying off the indebtedness secured by the pledge of the bonds that had been issued

as collateral security; also in discharging a deed of trust given by the power company, and in paying the costs of reorganization. The income bonds were to be substituted for those bonds of the railway company not held as collateral security. Of the stock, $150,000 was to be divided among the preferred stockholders of the railway company, and the remaining $30,000 was to be distributed among the purchasers of the first mortgage bonds. On account of certain litigation which had been instituted against the railway company, reorganization without foreclosure became impracticable; and a meeting of the bondholders of the railway company was held on December 22, 1897, at which Richard M. Venable, Charles R. Spence, and S. Hamilton Graes were appointed a committee of such bondholders as might become parties to the agreement then formulated, by which said committee were given authority to represent the bondholders in all proceedings for the collection of their bonds, and they were also directed to secure the organization of the two companies, with instructions to carry out, "as far as practicable," the plan originally outlined in the agreement of October 11, 1897. Each bondholder who signed said agreement obligated himself to deposit with the Mercantile Trust & Deposit Company of Baltimore the number of bonds set opposite his signature. A greater part of the security holders of the two companies assented to this agreement. For the purpose of effecting the reorganization so proposed, the committee were authorized to purchase the property of the two companies at foreclosure sale on behalf of the depositing bondholders, and to use their bonds, with the coupons attached, for the purpose of making payments therefor. Alford M. Fuller, the appellant, was the holder of 42 of the first mortgage bonds of the railway company, for $500 each, upon which the company had defaulted in interest on May 1, 1897. The appellant on May 9, 1898, caused his bonds to be deposited with the trust company, and the plan of reorganization to be signed for him, but he at the same time retained in his own possession the three coupons upon each of his bonds maturing May 1, 1897, November 1, 1897, and May 1, 1898. The fact that he so retained said coupons was noted by the trust company in the receipt given by it for the bonds.

The trustee named in the mortgage caused suit to be duly instituted to foreclose the same in the circuit court of the United States for the Western district of Virginia, and a decree was passed May 1, 1899, appointing commissioners, and directing them to sell the mortgaged property. The commissioners were directed to apply the proceeds of sale to the payment of the costs and certain preferred claims, then to pay the coupons past due (the mortgage having specially provided that, in case of sale thereunder, the coupons should be preferred to the principal of the bonds), and then to apply the residue of the proceeds of sale to the bonds ratably. As provided for by the decree, the sale was duly made, and the defendants, as such committee, purchased the property of the railway company for $150,000, and of the power company for $31,000; using in their settlement with the commissioners of sale the bonds deposited with the trust company, as well as the coupons deposited therewith, in-

118 F.—35

cluding the bonds of the appellant. It appears from the record that, after the confirmation of the sale by the court, the appellees were for the first time advised of the fact that the coupons due May 1, 1897, November 1, 1897, and May 1, 1898, had not been deposited with the appellant's bonds, and that he was then notified by the appellees that no provision had been made by the plan of reorganization for payment to depositing bondholders of any of the coupons due on and after May 1, 1897, and that therefore the appellant would not be permitted to share equally with the other depositing bondholders in the issue of the income bonds of the new company until he had deposited with the committee the coupons retained by him, or accounted for such money as he might collect because of them, out of the proceeds of sale, thereby placing himself on an equality with the other bondholders. The appellant, refusing to acquiesce in the contention of the appellees, proceeded to collect from the commissioners of sale the sum of $2,115.96, as due to him from the proceeds of sale on account of the coupons he had so retained. The appellees then offered to return to the appellant the bonds and coupons he had deposited, and take up the receipt which had been issued for them by the trust company; but this proposition was also declined by him. After the sale a meeting of the depositing bondholders and of others interested in the reorganization of the two companies was duly called and held; the object being to modify in certain particulars the plan of reorganization, in which meeting the appellant participated. The final plan of adjustment and reorganization was then agreed to and promulgated; the same containing certain changes from the original agreement not material to be fully set forth, so far as the matters we are now to dispose of are concerned. The appellees, as such committee, organized the new corporation, and caused to be conveyed to it the properties of the two old companies, and also issued the securities of the new corporation to the amounts provided, applying them as they were directed to do by the final agreement of the parties interested therein. The appellant was the only one of the depositing bondholders who failed to deposit for the use of the committee all of the unpaid coupons held by them, and he was the only bondholder to whom the committee declined to issue the new income bonds in exchange for his bonds and the coupons maturing May 1, 1897, and subsequently. The appellees, as such committee, being unable to adjust the controversy with the appellant, deposited with the Mercantile Trust & Deposit Company of Baltimore 42 of the income bonds of the new company, covering bonds held by the appellant, and notified him that said trust company would deliver the same to him whenever he would refund the amount theretofore collected by him upon his retained coupons, together with the interest due thereon. But the appellant refused to make such refund, and demanded the unconditional delivery to him of said income bonds, which being refused, he filed his bill in equity against the appellees, the object of which was to enforce the delivery to him of the income bonds so held by the committee with the trust company.

The appellees duly answered the bill, denying the appellant's right to demand the delivery of said bonds to him, and charging that he

was endeavoring to acquire an undue advantage over his co-bond-holders, which should not be permitted in a court of equity; that they, as such committee, were trustees, and that they would not permit one bondholder to acquire a preference over the others out of the sub-ject-matter of their trust; that the appellant's claim was inequitable and unjust, and that he should be required either to participate equally with the other bondholders in the reorganization, or to renounce all benefits of participation therein, and receive the dividend which was collected on the bonds deposited by him, from the proceeds of sale. The case, having been duly matured, came on to be finally heard, when the court below decreed against the contention of the appellant, and ordered that he should, within 30 days after said decree, pay to the defendants, as such committee, the sum of $2,115.96, the amount col-lected by him upon said coupons maturing May 1, 1897, November 1, 1897, and May 1, 1898, with interest thereon from the 28th day of October, 1899, when said sum was so paid him, or that he should de-posit said sum, with interest aforesaid, with the Mercantile Trust & Deposit Company of Baltimore, subject to the order of the defendants as such committee, or that, in default thereof, the appellant should be forever debarred from participating in the reorganization mentioned, or from claiming any of the benefits and advantages thereof, and should surrender to the appellees the receipt of the Mercantile Trust & Deposit Company for the bonds he had deposited, upon receiving from them the sum of $5,096.28, the dividend collected on the bonds and coupons of the appellant, and upon also receiving from the appel-lees, as such committee, the 42 bonds and coupons of the old com-pany; said bonds and coupons to have indorsed upon them a mem-orandum of the dividends paid thereon. From this decree the appeal we are now considering was granted.

The appellant claims a contractual right to the benefits of the reor-ganization agreement, and his suit is for the express purpose of obtain-ing specific performance of its provisions. It is clear that his bonds were deposited under that agreement, and the question before this court simply is, did the court below err in its construction of that con-tract? That court clearly stated the controversy in this way:

"The question involved is whether or not the complainant can be required by the defendants, as a condition of his obtaining from them $21,000 of income bonds of the new company, to produce and surrender certain defaulted coupons which had been detached from the old bonds before they were deposited, or be required to pay the money collected by the complainant for the coupons out of the proceeds of the foreclosure sale, or whether the complainant is entitled to keep the money, and to demand and receive the new bonds uncon-ditionally."

The bill of complaint is drawn upon the theory that the appellees, under the terms of the contract, have agreed to deliver to the appel-lant, unconditionally, the income bonds which are the subject of this controversy. The appellees insist that such delivery was only to be made after the appellant had performed the duties imposed upon him, the object of which was to equalize the condition of the bondholders participating in the benefits of the reorganization. All of the other bondholders have deposited all of the coupons relating to their bonds,

which were used by the appellees—they constituting the bondholders committee—in the purchase of the property at foreclosure sale; and the appellant's insistence is that, although he has retained three coupons pertaining to each bond deposited by him, nevertheless a court of equity will decree that he is entitled to share in the benefits of the reorganization plan equally with such other bondholders. The reorganization agreement was a mutual contract among the bondholders who signed it, and the appellees were their trustees, and it would certainly have been improper and inequitable for such trustees to have given any benefit growing out of the reorganization to the appellant that was not shared equally with all of the other bondholders. Such was the position assumed by the committee when they were first advised of the claim of the appellant, who then declined the tender of the committee to return him his bonds, and demanded from it all the securities, benefits, and advantages due to the depositor of bonds under the agreement. The appellees were not only authorized to represent those who had deposited bonds, in all proceedings instituted for the collection of such bonds, but were also expressly given the right to do whatever, in their judgment, might be necessary or desirable for the protection of the interests of those signing the agreement. It is clearly shown by the record that the appellees, as such committee, acting with the parties endeavoring to accomplish the reorganization, had formulated the plan upon the basis that no payment was to be made upon the bonds deposited under the agreement, nor for the coupons thereof maturing May 1, 1897, and subsequently, other than by the delivery of the income bonds of the new company; and it also plainly appears that all the depositors, except the appellant, turned over all their coupons for use by the committee in paying for the property purchased for the new company. We think that the appellant, when he became a party to such agreement, obligated himself to surrender all of the then past-due coupons of the bonds so deposited, and that such coupons were to be used by the committee in the purchase of the property, and also that such committee was fully authorized to adopt and enforce such methods of procedure as would bring about perfect equality among their beneficiaries. The appellant, as a party to the reorganization scheme, will not be permitted by a court of equity to claim any of the benefits resulting from the execution of that plan, until he has fulfilled entirely the stipulations that were to have been performed on his part. He is subject to and affected by all of the equities which the agreement to reorganize gives rise to. Cook, Corp. § 888; 1 Thomp. Corp. § 275; Jones, Mortg. § 621a; Appeal of Fidelity Insurance, Trust & Safe Deposit Co., 106 Pa. 144; Short, Ry. Bonds, § 902; Bliss v. Matteson, 45 N. Y. 22; Ex parte White, 2 S. C. 469; Child v. Railroad Co., 129 Mass. 170.

The bill in this case does not complain of the plan of reorganization; does not question the power of the committee, nor allege any dereliction of duty on its part, other than the withholding from appellant of the said income bonds; but it relies upon both the plan, and what the committee has done in executing it, and prays the aid of equity in enforcing the terms of that plan along the lines as it is construed by appellant. To grant the prayer of the bill would be to

destroy the mutuality and equality which was the foundation of the plan of reorganization that has now been successfully carried out.

This, in effect, disposes of all the assignments of error except those alleging that the court below erred in decreeing that the appellant should pay to appellees the sum of money which the circuit court for the Western district of Virginia had decreed should be paid to him. The circuit court for the Western district of Virginia, on the complaint of the Fidelity Insurance, Trust & Deposit Company, the trustee under the deed of trust securing the bonds, decreed a sale of the property under the terms of the mortgage, and, as incidental to the distribution of the proceeds of sale, determined what bonds and coupons were outstanding and entitled to participate therein. It did not at any time assume jurisdiction over the committee having charge of the reorganization of the companies, nor did it pass upon the equities of the parties to the agreement among themselves. The parties to the present litigation were not all before that court; the committee, as such, was not impleaded; nor were the questions now under consideration ever raised, submitted to, or decided by that court; and therefore the decree referred to is in no manner an estoppel between the parties to this suit. Evidently the appellant's contention in this particular is founded upon an erroneous apprehension of what the true issues before that court were, as well as of the matters really disposed of by it. None of the questions relating to the rights of the parties to the reorganization agreement, as between themselves, as well as their mutual equities, were before that court, and could not, under the circumstances, have been within the scope of the foreclosure proceedings. The real questions now at issue were in fact raised after the circuit court for the Western district of Virginia had disposed of the case before it, and after the appellees, as the organization committee, had refused to comply with the request of the appellant relating to the delivery of the income bonds claimed by him.

We do not deem it necessary to consider other questions assigned as error and discussed by counsel, relating to the pleadings and bearing upon matters of practice, as the points suggested are without merit, and, under the circumstances and equities of this cause, entirely immaterial.

There is no error in the decree complained of, and the same is affirmed.