## HABIRSHAW ELECTRIC CABLE CO. v. HABIRSHAW ELECTRIC CABLE . CO., Inc., et al.

## BONDHOLDERS' COMMITTEE OF DECEMBER 1, 1921, et al. v. COMMITTEE OF CREDITORS.

(Circuit Court of Appeals, Second Circuit. January 22, 1924.)

No. 269.

1. Appeal and error ⬅➡71 (3)—Mandatory order held appealable.

An interlocutory order of a District Court containing a mandatory provision is appealable, whether considered a final order under Jud. Code, § 128 (Comp. St. § 1120), or a mandatory injunction under section 129 (section 1121).

2. Evidence ⬅➡246—Expression of opinion by counsel in argument not admission of fact binding on client.

Counsel should have full freedom of discussion before the court, and a statement of opinion by counsel in argument cannot be construed into an admission of fact binding on his client.

3. Corporations ⬅➡574—When administration through receivership should dispose of property through reorganization stated.

Where a court through receivership has taken charge of the assets of a large corporation, the real value of which can be realized only by keeping it a going concern, it is desirable, to avoid large sacrifice of values and loss to all concerned, which would result from liquidation, that the property be finally disposed of through a reorganization.

4. Corporations ⬅➡574—Receivership; court without jurisdiction over voluntary reorganization agreement as respects claims deposited with committee.

Where bondholders and other creditors of a corporation in the hands of receivers have deposited their claims with a reorganization committee, under an agreement voluntarily made, the court has no summary jurisdiction to relieve a depositing creditor from such agreement and order a return of his claim.

5. Corporations ⬅➡574—Agreement for deposit of claims with reorganization committee is binding contract.

An agreement under which stockholders and creditors of a corporation in the hands of receivers have deposited their claims with a reorganization committee is a binding contract, and, so long as the committee does not violate its trust, a depositor cannot withdraw his claim except in accordance with its terms.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Habirshaw Electric Cable Company against the Habirshaw Electric Cable Company, Inc., and others. The Bondholders' Committee of December 1, 1921, and The Reorganization Committee of June 8, 1923, appeal from an order of the District Court. Reversed.

Appeal by Potter and others, constituting a committee of bondholders, and Malcolm D. Whitman and others, constituting a reorganization committee, from an order entered by the District Court for the Southern District of New York on January 4, 1924, which "ordered, adjudged, and decreed" that E. N. Potter and others, constituting a committee under a "Deposit Agreement" dated December 1, 1921, and Malcolm D. Whitman and others, constituting a committee under a "Plan and Agreement" dated June 20, 1923, and their agents, be "enjoined from making any use whatsoever of the bonds and claims of the bondholders and claimants represented by" certain petitioners "or from performing any act or thing as the attorneys in fact or representatives

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the said bondholders and creditors, and from incurring any expenses or performing any other services on behalf or at the expense of said bondholders and creditors, and from in any manner pledging or otherwise incumbering the bonds and claims of said bondholders and creditors, and from borrowing any sums of money for which said bondholders and creditors may be or become liable"; that the said bondholders and creditors mentioned in the petition herein who have deposited their bonds, notes, claims and other securities with said committees, be, and they are, authorized to withdraw, and the said committee of December 1, 1921, and the said committee of June 20, 1923, be, and they hereby are, ordered and directed forthwith to return and to deliver to said bondholders and creditors the bonds, notes, claims, and other securities of said bondholders and creditors in the control of said committees or of each of them or their depositaries; that a lien and charge be, and it hereby is, declared on the interest of each of said bondholders and creditors respectively, in the property of the plaintiff and defendant companies, to the extent of the pro rata shares of such expenses, if any, of the committee or committees as are properly chargeable and apportionable to the bonds, notes, claims, and securities, respectively, withdrawn and returned; and that there shall be noted on each bond, note, assignment, or other security thus returned a statement that the distributive share of each bond, note, assignment, or other security in the property of the plaintiff and the defendant corporations is subject to a lien for the aforesaid charges; that if such charges and expenses cannot be agreed upon by the parties, "any of the parties may apply to this court for a reference for the determination of their amount or for such other relief in that connection as may be just and equitable."

There were conflicting claims by the different classes of creditors as to their respective rights. The reorganization plan and agreement of June 20, 1923, was the result of long negotiations. The reorganization committee was composed of representatives from each class of creditors and, in the plan, different relative values were given to the respective classes of claims.

One of the difficulties which confronted the effort to reorganize was a large claim of the United States arising out of advances under contracts for the manufacture of war material, and this claim the United States asserted was entitled to priority.

The details of the plan need not be set forth. On September 14, 1923, about 79 per cent. of all the creditors (except the United States) had assented to the plan.

At a meeting of the reorganization committee on October 1, 1923, the deposited claims then amounting to 80 per cent., the committee declared the plan operative and notified the creditors accordingly on October 3, 1923.

To carry out the plan, a sale of the assets was necessary and the hearing of an application therefore was delayed pending negotiations for settlement of the claim of the United States. This claim was finally disposed of for $379,000.

The 'application for an order of sale came on to be heard before the court on October 25, 1923. At that time, there had been deposited under the reorganization plan of June 20, 1923, claims as follows:

Merchandise and sundry claims.............................$1,403,217.21
Bank claims............................................... 1,589,208.01
Debenture bonds out of a total outstanding of $1,894,500........ 1,514,000.00

Total ..................................................$4,506,425.22

The appellees here, a creditors' committee consisting of Randolph Whitman, Rollin Kirby, and B. J. Reis, represent $54,000 of the deposited debenture bonds and $12,082.61 of other deposited claims. They, with a stockholders' committee and .a merchandise and sundry claims committee, representing claims aggregating about $165,000, opposed the sale and offered several objections.

The district judge concluded that a sale should not take place and in an oral opinion carefully pointed out the respects in which he thought objections were well taken. It had been contemplated under the plan to raise $1,500,000 new money based on the balance sheet of March 31, 1923. In November,

1923, however, the financial affairs of the receivership had improved to a point where the court thought that $1,000,000 would be sufficient, and thus the assessment on creditors correspondingly decreased.

No order was entered upon this opinion, but the reorganization committee promptly and unanimously adopted modifications to the plan to meet the objection as to the amount of new money and certain other objections.

The creditors were notified of these modifications in a letter dated December 14, 1923, in which it was stated that this letter constituted an informal statement of the modifications of the plan and its practical effect, subject to the formal papers embodying the same, which would shortly be mailed to them.

Randolph Whitman, as chairman of the committee of objection creditors, from the time of the first hearing on the reorganization committee's application for an order of sale, had circularized the creditors, both those who had deposited under the plan and those who had not and had called for proxies with which to oppose the plan, without any expense to the creditors. Immediately after the court's opinion of November 16th, he solicited from the depositing creditors proxies authorizing him to request the withdrawal of their claims. On December 5, he served on counsel for the reorganization committee a demand on behalf of $51,000 of bondholders and $12,082.61 of merchandise and sundry creditors for the return of their deposited bonds and claims, and, on December 10, 1923, he served a petition and notice of motion for an order requiring the return of such claims, and enjoining the further use or representation of them by the reorganization committee. This petition came on to be heard on December 14th, was argued before the District Court, and an opinion was filed.

In this opinion, it is stated that the bonds and claims may be withdrawn and shall be returned by the reorganization committee upon payment of the pro rata share of the expense of the reorganization committee up to that time. The order supra, entered thereon on January 4, 1924, however, which is the order appealed from, goes further than this and requires the return of the claims without payment of the pro rata share of such expenses, and merely charges the same as a lien on the interest of each of such bondholders and claimants, respectively, in the property of plaintiff and defendant companies, providing that there shall be noted on each bond or claim thus returned a statement that the distributive share of the property of the companies is subject to a lien for such charges.

In the opinion infra, the "Supplemental Record" is not considered (1) because not stipulated by counsel for Potter et al., and (2) because the affidavits therein contained were not before the court when it made its order, having been verified thereafter. To avoid misunderstanding and further controversy on this point, it is stated that, had this court considered the supplemental record, the result infra would have been the same.

Larkin, Rathbone & Perry, Murray, Prentice & Aldrich, and Rabenold & Scribner, all of New York City (Henry V. Poor, Winthrop W. Aldrich, and Charles E. Scribner, all of New York City, of counsel), for appellants.

Lowenthal, Szold & Perkins, of New York City (Max Lowenthal and Maxwell Brandwene, both of New York City, of counsel), for appellees.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). [1] 1. Appellees have moved to dismiss the appeal "on the ground that the questions involved are moot and for want of jurisdiction, or to affirm."

The order appealed from contains a restraining injunction and a mandatory injunction. Each is the complement of the other and, indeed, so intertwined as not to be separable. But, if we view the order as divisible in two parts, the restraining feature comes too obviously

under section 129 of the Judicial Code (Comp. St. § 1121) to require anything but the statement of that fact. It is contended that the provision as to declaring a lien on the returned or withdrawn claims and securities deprives the latter part of the order of finality. Courts seek not to mistake form for substance. Nothing could be more characteristically final than a mandatory order "forthwith to return and deliver" the claims and securities referred to. The provision as to a lien is wholly incidental. The point is quite different from that considered in our recent decision in Perfection Cooler Co. v. Rotax Co., Inc., 296 Fed. 464, decided January 7, 1924, which fully reviewed an important question of procedure. Chadeloid Chemical Co. v. H. B. Chalmers Co., 243 Fed. 606, 156 C. C. A. 304, is also quite different.

Whether we view the second part of this order as a mandatory injunction or as a final order under section 128 of the Judicial Code (Comp. St. § 1120), the result is the same. It will suffice to refer to McCall v. Bladworth et al. (C. C. A.) 290 Fed. 365; The Flush (C. C. A.) 277 Fed. 25.

[2] It is contended, however, that the question is moot because counsel is referring to certain changes in the plan discussed in connection with the application for a sale stated, inter alia, "that any such change * * * necessarily involves a modification of the plan which would entitle depositors under the plan to withdraw from the plan."

In addition to other reasons in this record which dispose of such a contention, we take notice of it because to agree with it would be to introduce a dangerous doctrine. It is important that in matters of this character counsel should have full freedom of discussion before the court. The opinion of counsel, whether expressed thoughtfully or casually, cannot be construed into admissions of a fact, and, if counsel had not the opportunity of expressing their views frankly and freely, the court (and the parties) would be deprived of a complete understanding of the meaning and consequences of its decision. Counsel cannot bind clients in this way and plainly such a situation is entirely foreign to one where a fact is admitted or conceded. The rule, as stated by Wigmore, § 2590, 1923 edition (and we italicize "fact"), is:

"The vital feature of a judicial admission is universally conceded to be its conclusiveness upon the party making it, that is, the prohibition of any further dispute of the *fact* by him, and of any use of evidence to disapprove or contradict it."

The motion to dismiss the appeal is denied.

[3] 2. It may be well to restate some well-known propositions. After the court in an equity receivership has proper possession of the res, it is, in due course, confronted with final disposition. It may order the sale of the property unconnected with or irrespective of any plan of reorganization. It may, in some instances, divide the property pro rata among creditors or stockholders, as the case may be, or, if the property is freed from debt, return it to the owners. In the case, however, of large properties, such as those at bar, where rights and relations are very complicated, a sale disconnected with a plan of reorganization is likely to prove disastrous. Such a sale rarely obtains for the property its true value and often would enable a group financially

strong by combined action to gain unfair advantage over those who have not the means to protect the sale. Hence it is that courts of equity conserve the property in their custody until the time comes when its sale can justly be had as a step in reorganization. Sometimes such a sale takes place under a foreclosure decree; other times as here, where there is no foreclosure decree.

The case at bar is a perfect illustration of the great benefit which accompanies sound and competent administration in equity. It is plain that under the guiding hand of the district judge, and with the ability of those selected to administer the properties, the assets of these corporations have markedly increased, while, at least, one large claim has been substantially decreased. To have thrown these corporations into bankruptcy would have meant disaster instead of the continuance of important enterprises which now seems at hand.

The court, of course, must decide whether or not the plan is fair and equitable before it orders the sale which is the step precedent to effectuating the plan. It is rare that such a plan is academically perfect. In the maze of rights, compromises become necessary, and failure to agree upon some reasonable plan necessarily leads to unfortunate results, involving loss to those concerned. Thus it is that the principal problem of the court is to determine the fairness of the plan. The district judge fully appreciated all this, and, in his opinion of November 16, 1923, after speaking in commendatory terms of the work of the reorganization committee which, inter alia, "saved the estate a large amount of money that otherwise would have been expended in litigation," he said:

"I am convinced, however, that it is to the interests of all the creditors that there be a reorganization and that these properties should not now be liquidated. So far as I am concerned, I do not desire to have them within the custody and control of the court for a day longer than is absolutely necessary. I do feel, however, that before I do put the properties up for liquidation, the creditors should have the opportunity, if they desire it, to submit to the court a more liberalized reorganization plan than that which is now before me.

"It is not for me primarily to say what the reorganization plan may be, nor do I mean to indicate what it shall be. I shall however, briefly explain some of the objections to the present plan that have occurred to me and which, in my judgment render it inequitable and make it impossible for me to give my approval to it."

[4] But, in the case at bar, the court misconceived the extent of its power. The deposit and reorganization agreements are voluntary agreements over which the court has no summary jurisdiction; and the fact that parties intervene does not here transmute a summary proceeding into a suit in equity.

The court cannot compel any one to deposit, nor can it relieve any one from deposit, unless for proper cause, established in an appropriate suit brought for appropriate relief.

What the court has done here is on a petition to assume summary jurisdiction in respect of the status of deposited securities in the hands of these committees.

The enforcement of these deposit agreements between committee and depositor in no manner affects the res in possession of the court.

These agreements relate to the rights, not merely as between the committees and depositors, but as well as between depositors, and those rights will not add to nor substract one iota from the corpus of the res in the custody of the court.

In Graselli Chemical Co. v. Ætna Explosives Co., 252 Fed 456, 164 C. C. A. 380, the fundamental point was that the threatened action would interfere with the res. A mere reading of the opinions in that case will show it has no bearing here. Colonial Trust Co. v. Wallace (C. C.) 183 Fed. 897, is of no service to appellees for several reasons: First, that was a suit in equity, not a summary proceeding. Secondly, while recognizing the ability of the judge who wrote that opinion, it was nevertheless the view of a single judge, and is not authority, and, were the question there considered now before us, we would be inclined to the opinion that to construe "within" as meaning "before" was straining the import of a simple and ordinary word. Thirdly, and no doubt in view of that case, the draftsman of the deposit agreement here was careful to provide that withdrawal might be made 30 days after first publication and "in no event prior" thereto, and to supplement this with "depositors who fail to withdraw in the manner aforesaid within said period of 30 days, shall be conclusively and finally deemed for all purposes to have irrevocably waived the right of withdrawal. * * *"

In respect of the reorganization agreement, nothing could be stronger than, "deposited securities cannot, without the consent of the reorganization committee, be withdrawn from the plan and this agreement, except as and when in this agreement provided."

Finally, the other defects referred to in the opinion in the Colonial Trust Co. Case are not present here in either the deposit or reorganization agreements.

In Industrial & General Trust, Ltd., v. Tod, 180 N. Y. 215, 73 N. E. 7, the agreement provided that the committee would notify the depositors of the adoption of a plan, and that depositors would have 30 days within which to withdraw their securities. The committee, however, let the property go to a sale and bought it in with the deposited securities without having first adopted a plan of reorganization and thus given the depositors a chance to withdraw their securities. The plaintiff succeeded in a suit against the committee for damages for breach of contract. The court construed the agreement as necessarily implying an agreement on the part of the committee to submit a plan of reorganization before the properties had been sold.

[5] 3. Ordinarily, we should go no further, but we gather from the record the desire of the District Court and the necessity for prompt disposition to the end that the receiverships may be terminated and the reorganized business started as soon as possible.

The deposit and reorganization agreements are too long to quote. They are carefully and fairly drawn. They are based on mutual promises. Their very purpose ex necessitate is united action, so that the depositors acting through the committees may protect their rights. They are replete with safeguarding language to express that purpose. We need not pause to discuss whether under these agreements property rights in the bonds and claims, having been severally transferred to the

committees as trustees, the result is to create a single undivided trust estate. The committees are, of course, trustees or fiduciaries for certain purposes, but the fundamental point is that these deposit agreements are contracts. Fuller v. Venable, 118 Fed. 543, 548, 55 C. C. A. 309.

Such contracts do not differ in principle from promises to subscribe to stock or to charitable institutions. Lake Ontario, etc., R. R. Co. v. Mason, 16 N. Y. 451, 463; Nebraska, etc., Co. v. Lednicky, 79 Neb. 587, 113 N. W. 245; Irwin v. Lombard, 56 Ohio St. 9, 20, 46 N. E. 63, 36 L. R. A. 239, 60 Am. St. Rep. 727; Wilson v. First Presbyterian Church of Savannah, 56 Ga. 554; Petty v. Trustees of Church, 95 Ind. 278; First Church v. Pungs, 126 Mich. 670, 86 N. W. 235; U. S. & M. T. Co. v. U. S. & M. T. Co., Trustee, 250 Fed. 377, 381, 162 C. C. A. 447; Cowell v. City Water Supply Co., 130 Iowa, 671, 105 N. W 1016; c. f. Gilfillan v. Union Canal Co., 109 U. S. 401, 3 Sup. Ct. 304, 27 L. Ed. 977.

Perhaps, the most striking authority is 180 N. Y. 215, 73 N. E. 7, supra, for there the plaintiff brought his action for damages for breach of contract.

The court there said (italics ours):

"As we construe the instrument, *the bondholders had no power to withdraw their bonds until after a plan of reorganization had been prepared and notice thereof given, or until a breach of duty by the defendants.* This right to take their bonds back if they did not like the plan was vital to the bondholders. It was about the only right they had, and if they could not exercise it until after the road had been sold and reorganized it amounted to nothing. The deposit of the bonds with the trust company placed them in the absolute power of the committee, which had full control of them for the purposes of the reorganization scheme, provided it was accepted, and *the owner had no right to demand them until after a plan had been filed, when he had that privilege for the period of thirty days only.*"

As well said in the brief of counsel for appellants:

"A fortiori, in the case at bar, after a plan has been submitted, and assented to, and the committee have undertaken 'in good faith to endeavor to execute same,' there should be no right to demand back the deposited securities. The fact that the plan has been disapproved by the court does not ipso facto terminate the whole agreement. It merely brings into operation the necessary powers of the committee to modify the plan. Until the committee has modified the plan in such a way as to give the right to withdrawal, or has abandoned the plan, or the properties have been acquired by some other entity so that the purpose of the agreement can no longer be accomplished, or the committee has materially violated its agreement or trust, the terms of the agreement continue in full force and effect, without the right on the part of any of the depositors to withdraw from it. None of these events has yet occurred."

To hold otherwise than stated supra would be to destroy the opportunity of creditors or security owners to accomplish by united action what they rarely can achieve alone. If such agreements are to be treated as not binding contracts, then the work of such committees, which experience has proved to be vital to the solution of problems of this character, will go for nothing, and the administration and winding up of such estates will be gravely delayed and embarrassed; for there will be no certainty that on the eve of reorganization all that has

been done may not be destroyed, and that the committees may not be held liable for the proper expenses which it has incurred.

Indeed, it may be observed, in passing, that, if there was no contract here, there was no logical reason for the attempt in the order below to fasten a lien on the returned claims.

Finally, it may be said in this connection that, before a plan of reorganization is ultimately satisfactory to those concerned and to the court, it is usually necessary to make many changes to meet many differences of opinion, and the fullest opportunity should be given to work out an acceptable plan.

We have not overlooked the many cases cited by appellees. They either concern situations which involve control of or interference with the res or jurisdiction to enter dependent suits (St. Louis, San Francisco Ry. Co. v. McElvain [D. C.] 253 Fed. 123, the Ætna Explosives Co. case, supra) or are wholly irrelevant. Of the latter class, Texas Co. v. Hogarth Shipping Co., Ltd., 256 U. S. 619, 41 Sup. Ct. 612, 65 L. Ed. 1123, cited by appellees, is an illustration.

The order below is reversed, with costs. The motion to dismiss the appeal is denied. The mandate will issue forthwith.