### In re LUBLINER & TRINZ THEATRES, Inc.

### McGRATH et al. v. LUBLINER & TRINZ THEATRES, Inc., et al.

### Nos. 6545, 6582.

Circuit Court of Appeals, Seventh Circuit.
Dec. 1, 1938.

Harry H. Ruskin, of Chicago, Ill. (Harold J. Green and Gilbert A. Siegel, both of Chicago, Ill., of counsel), for appellants.

Claude A. Roth and William J. Friedman, both of Chicago, Ill. (Stanley A. Kaplan, of Chicago, Ill., of counsel), for appellee Balaban & Katz Corporation.

Herbert M. Lautmann, Isaac E. Ferguson, and Henry L. Kohn, all of Chicago, Ill., for appellee American Nat. Bank & Trust Co., successor trustee.

James B. Wescott, Sidney S. Gorham, Jr., and Robert W. Wales, all of Chicago, Ill. (Frederic W. Heineman, of Chicago, Ill., of counsel), for appellee Bondholders' Committee.

Joseph H. Schwartz, Edward A. Cooper, and Harry Adelman, all of Chicago, Ill., for debtors.

Before EVANS, SPARKS, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

This appeal involves orders of the District Court under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207.

On September 20, 1934, the principal debtor, Lubliner and Trinz, with its subsidiaries, Belmont Amusement Company, and Senate Building Corporation filed voluntary proceedings under section 77B. The Belmont Company in 1926, had issued first mortgage bonds of which those outstanding were of the face value of $446,500. These were secured by a trust deed on that company's property, which consisted of a moving picture theater, stores and apartments, and they were unconditionally guaranteed by the Lubliner and Trinz Corporation. The debtors were in possession of their properties, by order of court, since the inception of the bankruptcy proceedings. The trustee under the deed of trust securing these bonds, hereinafter referred to as the "Belpark" bonds, foreclosed the trust deed in the state court, and the successor trustee, The American National Bank and Trust Company of Chicago, which is hereinafter referred to as the indenture trustee, filed a claim in the bankruptcy proceedings, based upon the foreclosure decree, in behalf of all Belpark bondholders.

The indebtedness of Lubliner and Trinz consisted primarily of its guarantee of these bonds, and of a disputed liability as lessee under a lease assigned as security for the Senate Building Corporation bonds, of the face value of $653,520, which were secured by a trust deed on that company's property. These bonds were also guaranteed by Lubliner and Trinz.

On April 24, 1936, the bondholders' committee, having theretofore called for the deposit of bonds under both trust deeds, became a party to the bankruptcy proceedings by leave of court. The appellants were holders, since the original issue in 1926, of Belpark bonds in the aggregate principal sum of $14,500. They deposited them with the committee for which they received certificates of deposit.

Balaban and Katz, a Delaware Corporation, was the sole stockholder of Lubliner and Trinz, which in turn owned all the

stock of the Belmont and Senate companies. From time to time Balaban and Katz had acquired in the open market, at prices below par, Belpark bonds approximately amounting to $140,000, par value. On November 2, 1936, the bondholders' committee, with the knowledge of the court, notified all the depositing bondholders that Balaban and Katz had offered to purchase for cash upon delivery all Belpark and Senate bonds which the committee might tender at the time of consummation of such proposed purchase, for a price equal to eighty-six per cent of their par value— provided that the coupons due August 5, 1932, and subsequently thereto, should be attached; that at least $210,000, face value, of said bonds with coupons attached should be tendered on or before December 1, 1936, at purchaser's option; and that the committee would deduct from the proceeds of the sale four per cent of the face value of each bond to cover the overhead and committee expenses, compensation of its counsel, and expenses of its depositaries. Notice was further given each depositor that the committee would accept and comply with the offer with respect to all the bonds held by it, except as to those whose owners might object in writing within twenty days. Lack of such objection would be considered as an acceptance of the offer by such depositor. The course of action if the offer were not consummated was also set forth in the notice.[1]

The notice described the property as a three story and basement building, located at 3231 North Cicero Avenue, containing a theater of approximately 2000 seats, 8 stores, 18 two-room and 2 one-room apartments; and stated that it was under lease to Balaban and Katz at a minimum annual rental of $39,000 plus twenty-five per cent of the net operating profit, and that the additional rental for the year ending June 30, 1936, amounted to $7,549.76. It further disclosed the funds in the hands of the indenture trustee from the operations of the property, the amount of taxes assessed against it, and an appraisal of the property by the appraisal committee of the Chicago Real Estate Board at $331,041, as of May 5, 1936. The guaranty of the bonds by the parent company was also disclosed, and a statement of its assets and liabilities was set forth in an appended letter, which showed a cash balance on October 3, 1936, of $252,542.51. It was further stated that the indenture trustee had asserted a claim against the Senate Theater which was being contested by the principal debtor, and that Balaban and Katz was also a creditor of the principal debtor in the approximate sum of $100,000.

Appellants accepted the offer, and surrendered their certificates of deposit, and their bonds, with all other deposited Belpark bonds, aggregating $265,000 face value, were sold by the committee to Balaban and Katz.

For almost three years the debtors and their creditors had attempted to agree upon a plan of reorganization, but were unsuccessful. On July 16, 1937, the holders of $5,500, face value, of Belpark bonds, not deposited with the committee, filed an intervening petition for the appointment of a trustee for the principal debtor and its subsidiaries. They were represented by the same counsel who now represents the appellants here. The petition prayed for an order for an examination before a special master of the debtors, Balaban and Katz, and the American National Bank and Trust Company, as Trustee under the trust deeds. It was referred to a special master for hearing and report.

On the same day, the principal debtor and its subsidiaries submitted a plan of reorganization, based upon Balaban and Katz' proposal to acquire all assets of Lubliner and Trinz, free and clear of all liens, by paying all creditors in full. The proposal of Balaban and Katz attached thereto offered to cancel all unsecured claims held by it; to deliver its Belpark and Senate bonds in the respective amounts of $425,000 and $239,300 to the principal debtor; to pay the sum of $92,355 in cash, and to deliver the sum of $50,000 as security for the payment of costs and expenses of administration in the reorganization proceedings. The offer was subject to the condition that

[1] "In the event the offer herein described is not consummated, the Committee will continue to endeavor to effect a feasible reorganization of the bond issue. Because of the involved condition of Lubliner & Trinz Theatres, Inc., the ultimate consummation of such a reorganization may be delayed for a considerable period of time.

"The Committee accordingly is of the opinion that the depositors should be given an opportunity to decide whether they wish to accept this offer, or to wait such time as is necessary to work out a reorganization. * * *"

the debtor would deliver to Balaban and Katz all its assets free and clear of all liens and claims; deliver the Belpark and Senate bonds received by it to the Belpark and Senate indenture trustees, respectively, and cause them to cancel such bonds; and pay to such indenture trustees, respectively, a sufficient amount of money, which, together with the money held by the trustees, would enable them to satisfy the outstanding Belpark and Senate bonds, other than those which had been held by Balaban and Katz, at par, plus interest at the rate of five per cent from the date of the master's reports in the foreclosure proceedings until the date of the decree authorizing the acceptance of the proposal.

On September 26, 1937, the same nondepositing bondholders who had filed their intervening petition for the appointment of a trustee on July 16, 1937, also filed a supplemental intervening petition seeking relief similar to that prayer in their former petition. It was likewise referred to the same special master. These petitions impleaded the same parties, alleged fraud, and were based to a great extent on information and belief. The principal debtor and Balaban and Katz answered under oath denying any collusion, fraud or conspiracy. The allegations of these petitions are admitted to be substantially the same as those contained in appellants' petition subsequently filed which was not dismissed by the court, and their amended petition which was not permitted to be filed. These will be more particularly set forth. Appellants, for themselves and all others similarly situated, were permitted to file their original petitions, subject, however, to the question of jurisdiction. On the same day the court approved the plan proposed on July 16, 1937, and authorized the acceptance of the proposal of Balaban and Katz. By further leave of court, appellants' petition was modified by short amendment on October 29, 1937. The amendment made charges against the indenture trustee but did not materially enlarge the original petition. Appellants say, however, that they do not seek to enforce any action against the trustee, but merely seek an answer from him in aid of their petition.

The gist of appellants' complaint is that when they permitted the committee to sell their bonds to Balaban and Katz for $86 for each share of one hundred dollars par value, each share was in fact worth $139.50, including the due and unpaid interest thereon; that Balaban and Katz not only had knowledge of this fact, but owned all of these debtors, and dominated them to such an extent that it occupied a position of trust with respect to these appellants; that it was in duty bound to make full disclosure to them at the time of its purchase of their stock, of all facts materially bearing upon the value of the stock at that time, which it did not do. The petition alleged that Balaban and Katz concealed from appellants the following facts which it knew: That it was in fact not a creditor of Lubliner and Trinz but was its sole stockholder; that it was indebted to the debtors in the section 77B proceedings in a sum sufficient to pay in full the principal and interest of all the bonds involved; and that the value of each Belpark bond was the principal and interest due thereon. It was further alleged that all the parties in the section 77B proceedings knew that appellants did not know these facts, and that they were not generally known, and that the proceedings were so conducted by the parties thereto, as to conceal the true facts regarding the estates and the value of the Belpark bonds. It was also alleged that Balaban and Katz, continuously since it acquired all the stock of Lubliner and Trinz, both prior to and during the section 77B proceedings, had diverted assets from Lubliner and Trinz and the Belmont Company in fraud of their creditors, and had operated these companies and their properties as an adjunct or department of its business and to its benefit; that it dominated the depositors' committee and the indenture committee, who throughout the proceedings had a common counsel; and that all the parties, without the knowledge of the court, had used the section 77B proceedings as a means to permit Balaban and Katz to acquire appellants' deposited bonds, and not for the purpose of reorganization.

Appellants' petition proceeded on the theory that they were the pro tanto beneficial owners of the Belpark bonds unlawfully acquired from them by Balaban and Katz, and hence were creditors in the section 77B proceedings of both the Belmont Company and Lubliner and Trinz to the extent of the full amount due for principal and interest on the bonds less such portion of the principal paid by Balaban and Katz, with interest thereon from the date of payment.

When the decree was entered authorizing the acceptance of the Balaban and Katz

offer to acquire the assets of the principal debtor by paying all creditors in full, the petitions seeking the appointment of a trustee for the debtors were still pending. The record discloses no further efforts by appellants either by reservation or otherwise to retain jurisdiction for further hearing on the decree. The court, however, did reserve jurisdiction for the purpose of thereafter determining whether it had jurisdiction over the subject matter of appellants' petition, and for the further purpose of determining the amounts of interest, fees and allowances. On November 3, 1937, the debtors filed their report showing that the decree of October 26, 1937, had been fully complied with. The report was approved and the subsidiary debtors were dismissed from the proceedings.

On November 8, 1937, Balaban and Katz moved to strike appellants' original petition as amended. The grounds were:

1. That the court had no jurisdiction over the subject matter of the controversy set forth in the petition, as amended, which is a controversy between the petitioners and Balaban and Katz, a creditor of the principal debtor, and the result of the controversy can have no effect upon the reorganization proceedings or the estate subject to the jurisdiction of the court.

2. That the subject matter set forth in the petition could not be the subject of a summary proceeding but could only be maintained by an independent action.

3. That the petitioners were not creditors of the principal debtor or its subsidiaries, and do not allege any interest in the estate subject to the jurisdiction of the court.

On November 29, 1937, appellants requested an order permitting them to file an amended petition. It did not change the substance of the former petition, and supplied no additional jurisdictional facts. The affidavit in its support claimed that it merely particularized certain transactions referred to generally in the original petition, and supplied essential facts theretofore omitted.

Among other things the proffered amended petition alleged that on October 4, 1937, at a hearing in connection with the petitions for a trustee filed by the non-depositing bondholders hereinbefore referred to, appellants informed counsel for Balaban and Katz, the debtors, the committee, and the indenture trustee of their rights as beneficial owners of the Belpark bonds sold to Balaban and Katz, stating that a petition was being prepared asking that appellants be permitted to participate as creditors to the extent of the full amount due on those bonds, less the Balaban and Katz payment, or on such terms as the court would prescribe; that Balaban and Katz thereafter agreed to permit appellants to participate as creditors in the section 77B proceedings the same as other holders of Belpark bonds, upon such terms as the court would approve under a plan then pending, and requested appellants not to file their petition until the pending reorganization plan was changed to adequately provide for appellants, so that the court might have all pending matters for disposition before it at one time; that on October 26, 1937, Balaban and Katz, in violation of its suggestion and request, offered Lubliner and Trinz sufficient money to pay in cash all holders of Belpark and Senate bonds not then held by it, the full amount of the principal and interest due thereon, and sought thereby to have the section 77B proceedings dismissed and thus oust the jurisdiction of that court over appellants' rights against the debtors and other parties. That which is alleged to have been thus contemplated by Balaban and Katz was accomplished by the decree of October 26, 1937.

The relief sought by the pending petition and the proffered amended one was practically the same, except that in the latter a request was made that the court remove the committee and allow its claim as the claim of the persons who were formerly holders of the Belpark certificates of deposit, reduced in the amount of the payment made by Balaban and Katz, and that provision be made by order of court for the payment of reduced claims for the petitioners to the persons entitled thereto.

On December 13, 1937, appellants' original petition as amended, and their proffered amended petition came on for hearing. The court having heard arguments on jurisdiction respecting the first, dismissed it, and denied their motion to file the latter. From this order the appeal is prosecuted.

■ The District Court did not pass upon the merits of appellants' petitions. It merely held that it lacked jurisdiction to pass upon them, and left appellants free to pursue their remedy in the proper forum. This is obvious from the reservations in the decree of October 26, 1937, and the order appealed from. Unless corporate entities are entirely disregarded this contro-

versy is wholly between appellants and the Balaban and Katz Corporation. Whether that corporation was guilty of fraud in securing title and possession of appellants' bonds is beside the question now before us. Until they have successfully maintained an action against Balaban and Katz in support of their claim, they can not, as equitable owners of the bonds, assert such claim against the debtors. In re Fox West Coast Theatres, 9 Cir., 88 F.2d 212; Smith v. Chase National Bank, 8 Cir., 84 F.2d 608; In re Railroad Supply Co., 7 Cir., 78 F.2d 530.

Appellants' claim is not dependent upon the bankruptcy proceedings, nor has it any direct relationship to it. Fulton Bank v. Hozier, 267 U.S. 276, 45 S.Ct. 261, 69 L. Ed. 609; Nixon v. Michaels, 8 Cir., 38 F. 2d 420. Its outcome can not in any manner affect the status of the principal debtor or its subsidiaries. All of their debts have been paid, they have no assets, and their litigation of more than three years standing was ended by the order of court. It is conceded that appellants' claims cannot be determined without a controversy involving Balaban and Katz. The alleged fraud, if true, is practically and solely attributed to that corporation, and no one else, and the relief demanded, if granted, must eventually come from it. The record discloses that it is amply able financially to compensate appellants for any recovery that may be awarded. Under the circumstances presented we think the court had no power to act (Fulton Bank v. Hozier, supra; Moss v. Furlong, 6 Cir., 93 F.2d 182; Brumby v. Jones, 5 Cir., 141 F. 318), nor was such power conferred by the reservation in the decree of October 26, 1937.

Moreover, if it be conceded that the court had jurisdiction of the subject matter of the petitions, there is no doubt that other forums also had jurisdiction, and the District Court, in the exercise of its sound discretion, might well have required appellants to invoke the jurisdiction of such other forum, under the facts here presented. In re Railroad Supply Co., supra. See Smith v. Chase National Bank, supra. Furthermore, it is well settled that a court of bankruptcy has no jurisdiction in a summary proceeding to entertain an adverse and contested controversy for fraud and deceit brought by, and directed against, persons other than the debtor.

We do not understand that appellants question the legal principles we have referred to, or their applicability to the facts here presented, unless we grant their contention that all corporate entities should be disregarded, and Balaban and Katz considered as the real identity of all the debtors. There is no doubt that the courts have both the power and the duty to look through forms of corporate entity to the substance of the transaction under investigation, when to do so will enable them to properly determine the questions actually presented for adjudication, and not to do so will cause a miscarriage of justice with respect to those questions. This rule does not go so far, however, as to authorize a court to disregard corporate entities in order to determine incidental matters between outside parties not connected with or helpful in the determination of the question under judicial investigation. If appellants were permitted to prevail, it would merely provide a means of summarily adjudicating an adverse controversy between them and Balaban and Katz, with no possible hope of benefit to the debtors' estates. Under these circumstances the District Court was warranted in not disregarding the corporate entities, and in dismissing the petition.

It is contended by appellants that the processes of the court were abused and diverted in the aid of matters not contemplated by the Bankruptcy Act, that is to say, they were used solely for the purpose of unlawfully aiding Balaban and Katz in the procurement of appellants' bonds. The District Court was apprised of this contention by the contents of the petitions, and obviously concluded that the record and the facts pleaded did not warrant the pleaders' conclusion. The court's action in this respect was justified.

Appellants further contend that under subsection (b) of section 77B, 11 U.S.C.A. § 207(b), it was the duty of the court to carefully scrutinize the deposit agreement, and that a sale of bonds under such agreement should not be upheld without the court's authorization. The petitions allege that the sale of the bonds was made without the court's knowledge. This record discloses, however, that the court was informed of the proposed purchase of the bonds before the sale was consummated. No record authorization was sought or given, and we think it was not necessary, because the provisions of subsection (b) seem to be limited to matters affecting the reorganization proceedings and cannot affect private contracts outside the scope of that clause.

Finletter, "Principles of Corporate Reorganization in Bankruptcy" (1937), page 315. Neither the intervention of the committee nor its failure to secure an authorization order from the court affected the passing of title to the bonds to Balaban and Katz. See In re Spruce Apts., Inc.;[1] Texas Hotel Securities Corporation v. Waco Development Co., 5 Cir., 87 F.2d 395; Security-First National Bank v. Rindge Co., 9 Cir., 85 F.2d 557, 107 A.L.R. 1240; Habirshaw Co. v. Habirshaw Co., Inc., 2 Cir., 296 F. 875, 43 A.L.R. 1035.

Whether Balaban and Katz owed appellants a fiduciary duty which it violated, thus becoming a trustee of any kind, was not before the District Court, because it held that it lacked jurisdiction, and we think properly so. We likewise refrain from intimating any opinion as to the merits of appellants' petition, for they must be determined in another forum.

For the reasons above stated we are also of the opinion that the District Court committed no error in denying permission to file appellants' amended petition.

The orders are affirmed.

---

1 No opinion for publication; C.C.H. Bankruptcy Law Service, par. 4346.